## CITY COUNCIL OF AUGUSTA *et al.* *v.* REYNOLDS,
### solicitor-general, *ex rel.*

1. A fair occupying seventy-five or eighty feet in width and four blocks in length of an important business street in a city, and consisting of numerous tents, inclosing shows and exhibitions, in front of which are stationed men blowing horns and talking through megaphones to attract attention, together with various other stands, booths, structures, Ferris wheels, merry-go-rounds, and other devices for amusement of the public and profit to the owners, which fair a company of the State militia is permitted to station on the street for a week, is a public nuisance of most aggravated nature.

2. There is nothing in the charter of the city of Augusta which permits the city authorities to grant the use of its streets for the operation of an enterprise of the nature above indicated.

3. A court of equity has jurisdiction, at the instance of the solicitor-general, to restrain by injunction the erection of a public nuisance.

Argued April 17,—Decided May 10, 1905.

Injunction.  Before Judge Hammond.  Richmond superior court.  April 1, 1905.

An information was filed in behalf of the State by the solicitor-general of the Augusta circuit, upon the petition of named parties complaining of the City Council of Augusta and of John D. Twiggs Jr., as captain of the Oglethorpe Infantry, a company of the State militia.  The petition alleged, in substance, as follows:  For several years past it has been customary from time to time to hold street fairs or carnivals in the city of Augusta.  The city council has granted the defendant Twiggs permission to hold one of such fairs, during the first week in May, 1905, on Broad street, which is 180 feet wide, and is the principal business street and thoroughfare in the city.  Seventy-five feet of the street in width and four blocks in length will be occupied by the tents, buildings, and structures of the fair.  The fair will consist of tents, inclosing shows and exhibitions, structures, stands, Ferris wheels, merry-go-rounds, "shoot the chutes," the "loops," and various devices and constructions and obstructions, and will monopolize the portion of the street in which it is placed.  These obstructions will seriously interfere with the use of the street by the public for traffic, travel, and business, and will occasion great hurt and annoyance to the citizens in general.  The carnival will consist of a large number of separate shows and exhibitions, each in a separate tent or enclosure, besides numerous stands or booths for the

sale of articles of merchandise.   Criers or "spielers" will be stationed in front of each tent, show, stand, or booth, who, by the use of horns, megaphones, bells, drums, and similar instruments, will attempt to attract crowds of people in the street to each place.   Admission will be charged by the proprietors to these shows and exhibitions.   It is alleged that the City Council of Augusta has no authority under its charter to permit such an obstruction of its streets as will be made by the carnival; that the nuisance not being completed, the statutory remedy for the abatement of nuisances is not applicable, and that a separate proceeding would have to be instituted to abate each show or exhibition; and that for these reasons a court of equity has jurisdiction to enjoin the erection of the obstructions composing the fair.   The prayer was for such an injunction.   The case was heard on a demurrer to the petition.   The judge granted an interlocutory injunction, and the defendants excepted.

*C. Henry Cohen, Austin Branch,* and *George T. Jackson,* for plaintiffs in error.   The obstructions did not constitute a nuisance that could be enjoined: 43 Am. Dec. 709; 69 Am. Dec. 536; 85 N. C. 572; 40 Am. R. 648; 4 Yerg. 163; 4 Thomp. & C. (N. Y.) 435; 82 Minn. 308 (83 Am. St. R. 428, 84 N. E. 1022); 38 Am. R. 117; 102 N. Y. 219 (55 Am. R. 804); 147 Ind. 556; 15 Am. & Eng. Enc. L. (2d ed.) 492; 27 Id. 688; 20 *Ga.* 350; 28 *Ga.* 32; 30 *Ga.* 506; 33 *Ga.* 601; 49 *Ga.* 476; 67 *Ga.* 618; 86 *Ga.* 756; 93 *Ga.* 68; 98 *Ga.* 54; 121 *Ga.* 399. Power of city over streets:   Smith, Mun. Corp. § 1309; Dillon, Mun. Corp. §§ 657–8; 121 *Ga.* 399; Blome's Code of Augusta, 308; Acts 1872, p. 14; Acts 1898, p, 131; 5 *Ga.* 546; 103 *Ga.* 302; 75 *Ga.* 433; 96 *Ga.* 553; 112 *Ga.* 784; Pol. Code, § 746; 157 Ill. 37 (46 Am. St. R. 311); 51 N. E. 763; 52 N. W. 212. Remedy at law:   Civil Code, § 4760; 113 *Ga.* 1146; 107 *Ga.* 184; 50 S. E. 45, 173; 18 *Ga.* 530; 50 *Ga.* 130; 59 *Ga.* 790; 83 *Ga.* 452; 116 *Ga.* 461; 42 *Ga.* 637–8; 55 *Ga.* 310; 60 *Ga.* 266; 80 *Ga* 259.   Injunction:   116 *Ga.* 461; 117 *Ga.* 441; 112 *Ga.* 788; 77 *Ga.* 815; 30 *Ga.* 513; 9 *Ga.* 425; 33 *Ga.* 602; 50 *Ga.* 458; 51 *Ga.* 523; 72 *Ga.* 172; 77 *Ga.* 271, 810; 84 *Ga.* 24; 118 *Ga.* 737.   Equity will not enjoin a crime: Penal Code, §§ 641, 715; 104 *Ga.* 24; 106 *Ga.* 733; 116 *Ga.* 294; 16 A. & E. Enc. L. (2d ed.) 363.

*J. S. Reynolds, solicitor-general, E. H. Callaway,* and *W. K. Miller,* contra. Nuisance: Civil Code, §§ 3858, 3861 ; Penal Code, § 715 ; 49 *Ga.* 476 ; 86 *Ga.* 756 ; 68 *Ga.* 431 (3) ; 67 *Ga.* 618 (1, 2) ; 99 *Ga.* 18 ; 78 *Ga.* 271, 803 ; 86 *Ga.* 96 ; 80 *Ga.* 893 ; 100 *Ga.* 703 (8) ; 113 *Ga.* 546 ; 116 *Ga.* 316 ; 118 *Ga.* 741 ; 33 *Ga.* 601 ; 55 *Ga.* 310 ; 36 Am. St. R. 664 ; 148 Ill. 51 ; 55 Ill. App. 470 ; 18 Abb. N. Cas. 126 ; Elliott, Roads & Streets, 477–84, 490, 494, 498–9 ; 15 Am. & Eng. Enc. L. (2d ed.) 491– 2, 495–500, 505–6 ; 6 Allen, 588 ; 34 N. J. L. 204–5 ; 129 Mass. 594 ; 42 Wis. 64 (24 Am. R. 435) ; 6 Car. & P. 636 ; 4 Clark (Pa.), 17 ; 59 How. Pr. 333, 335 ; 108 Ala. 45, 35 L. R. A. 303 ; 39 L. R. A. 654, 657, 661 ; 1 Ventris, 169 ; 2 Dill. Mun. Corp. § 657 ; 84 *Ga.* 374 ; 87 *Ga.* 605 ; 93 *Ga.* 561 ; 43 S. E. 345 (3–5). Remedy: Civil Code, §§ 3863, 4760–3 ; 40 *Ga.* 87 ; 67 *Ga.* 190 ; 70 *Ga.* 191 ; 79 *Ga.* 807 ; 113 *Ga.* 537 ; 72 *Ga.* 172 ; 105 *Ga,* 337 ; 112 *Ga.* 791 ; 30 Ga. 512–13 ; 59 *Ga.* 790 ; 117 *Ga.* 440 ; 42 *Ga.* 638 ; 50 *Ga.* 461 ; 105 *Ga.* 735 ; 116 *Ga.* 293 ; 91 *Ga.* 210 (1) ; 50 Am. St. R. 168 ; 59 Id. 769 ; 34 Mich. 472 ; 30 Fla. 506, 512 ; Elliott, Roads & Streets, 485, 489, 495–6 ; 14 Enc. Pl. & Pr. 1118, 1130, 1134–6 ; 10 Id. 902 ; 1 Am. & Eng. Enc. L. (2d ed.) 64. The city has no power to close Broad street: Pol. Code, § 745 ; Acts 1898, p. 133.

COBB, J. 1. Streets are primarily intended for the use of travelers ; and a municipal corporation has no power, in the absence of express legislative authority, to allow a street to be used for any other purpose. Political Code, § 745. Any permanent structure in a street which materially interferes with travel thereon is a public nuisance. Permanent structures which do not interfere with travel and which are erected for public purposes, such as telegraph and telephone poles, and the like, are permissible. But no permanent structure of any character which interferes in the slightest degree with the right of travel upon the street is ever permissible where such structure is erected for purely private purposes. Temporary obstructions in a street are permissible under certain circumstances, even where the obstruction is for the benefit or convenience of an individual. A merchant may temporarily obstruct passage along a street either in receiving goods from a carrier on the street or delivering goods to such carrier. A householder may temporarily obstruct a street in moving his effects

out of or into his house. It is impossible to enumerate all the cases in which the temporary obstruction of a street may be allowed; but the general rule is that if the purpose for which the obstruction is created is lawful, and the obstruction exists only for such a time as is reasonably necessary to accomplish the purpose which brings about the necessity for the obstruction, such an obstruction would not be a public nuisance. What would be a reasonable time is to be determined according to the circumstances of each case. If the obstruction continues for a time that is not reasonably necessary for the accomplishment of the purpose, then it becomes a public nuisance. What would be an unreasonable time in cases where goods are being received into or delivered from a place of business, or where household effects are being carried into or out of a place of residence, might not be an unreasonable time where the obstruction is made necessary on account of buildings being erected upon property abutting the street. In all cases the obstructions to public travel should be removed as soon as the reason for the obstruction has ceased. To continue to obstruct a public street with those things necessary in case of the erection of a building upon abutting property, after the building has reached a stage where such obstructions are no longer necessary in carrying on the work, would render the person so continuing the obstruction liable as the maintainer of a public nuisance. Any temporary obstruction in a public street is presumptively a public nuisance, and it is incumbent upon the persons responsible for the presence of such obstruction to show that it was placed in the street in furtherance of a lawful and legitimate purpose, and has not been continued any longer than was reasonably necessary for the accomplishment of this purpose. Persons who have places of business or residences upon lots abutting upon the street may temporarily obstruct the street under those circumstances where it is necessary to completely enjoy the rights and privileges incident to ownership of property so situated. Persons who own vacant lots abutting upon a street may temporarily obstruct the streets whenever necessary to improve such property by the erection of buildings thereon, but no such necessity can ever exist when upon the property to be improved there is ample room for the deposit of all material to be used in the building and carrying on of all work essential to its construc-

tion.    The question to be determined in the present case is whether a street fair of the character described in the petition would be such an obstruction of a public street as would make it a public nuisance.    It would not be a permanent obstruction, for it is only to continue one week.    Being a temporary obstruction only, it is to be determined whether it results from a lawful purpose.    The obstruction is purely for private gain.    The fact that the promoter of the enterprise is a military company which is a part of the State militia does not make it one inaugurated for a public purpose.    It is to occupy not more than one half of the street.    But the public is entitled to the whole of every street, as against any one who places obstructions therein for other than a lawful purpose.    Com. *v*. Ruggles, 6 Allen, 588; 1 Wood on Nuisances (3d ed.), § 250.    The power over streets, given to municipal corporations under the ordinary grants in municipal charters, does not authorize the municipal authorities, even by express ordinance, to permit the erection in streets of temporary obstructions for purely private gain.    The enterprise described in the petition is not in any sense a public enterprise.    It is merely a scheme of private individuals for pecuniary gain, and the use of the street, either in whole or in part, has not as a basis any purpose which the law would recognize as lawful, in the absence of express legislative authority permitting it.    In other words, the enterprise sought to be carried on in the street would, if permitted, be nothing more or less than a public nuisance, and a public nuisance of a most aggravating character.    See Rex *v*. Carlile, 6 C. & P. 636; State *v*. Laverack, 34 N. J. L. 204; 15 Am. & Eng. Enc. L. (2d ed.) 499–500; Elliott on Roads and Streets (2d ed.), § 648.    In some old English cases it was held that a fair in a highway was permissible, but an examination of those cases will show that the ruling in each was based upon the existence of an immemorial custom.    See Elwood *v*. Bullock, 15 L. J., N. S. 330; King *v*. Smith, 4 Esp. 109.    Besides, the old English fairs were very different enterprises from the one described in the present petition.

2. It is therefore to be determined whether there is any authority in the charter of the City of Augusta for permitting a portion of one of its streets to be used for the purpose of a street fair of the character described in the petition.    The charter of

Augusta contains the ordinary grants in reference to the laying out and control of streets. Blome's Code of Augusta, 308, 455. These powers do not authorize such a use of the street, and it was not seriously contended in the argument that they did. It is, however, strenuously insisted that under the act of 1898 (Acts 1898, p. 131), amending the charter of Augusta, the municipal authorities have power to permit such a use of the streets. Taken as a whole, the act seems to be limited to a delegation of power to deal with the streets for railroad and depot purposes. But there is some very broad language in the act, and for the purposes of this case it will be treated as conferring the broader power to deal with the streets for any purpose. The act declares: " When, in the opinion of the City Council of Augusta, the whole or any part of a street has ceased to be of general utility or use as a street, the city council, in its discretion, may permit platforms, gang-ways, tracks, or other structures to be constructed upon such level, and with such width, height, length, and of such material as it may prescribe and approve, and on such terms and conditions as it may designate; or the City Council of Augusta, in its discretion, may declare the same vacant and abandoned as a street, and donate the same to a use which, in their opinion, will be of advantage or utility to the commercial or business interests of the city, on such terms as the city council may prescribe." It is claimed that this confers upon the city authorities the power to vacate a street and use the land for any purpose that may be beneficial to the commercial interests of the city. Let this be conceded. The further contention is made that the power to vacate altogether and for all time carries with it the power to vacate in part and for a limited time. But the exercise of this power is dependent upon the city council having reached the conclusion that the street is no longer of public utility; and before the power to vacate can be exercised it must appear that it is the opinion of the council that the street is no longer of public utility. It not only does not appear that it is the opinion of the city council that the portion of Broad street where permission was granted to hold the street fair has ceased to be of public utility, but it appears from the petition that Broad street is the principal and most important business street in the city, and the use of the street for the fair was limited to one week. The present record

does not present any such case as is contemplated by the act of 1898, even under the liberal construction contended for. The council has not exercised any authority based upon an opinion that the portion of Broad street in question has ceased to be of public utility, or will not be of public utility during the week the fair is to be held; but it has simply authorized private individuals, for their own pecuniary benefit, to use a large portion of an important business street, and thereby deprive the public, for several days, of the right to use that portion of the street for traffic or travel. There is absolutely nothing in the act of 1898, or in any other provision of the charter of Augusta, which can be properly construed as authority for the city authorities to permit such a use of one of its streets.

3. The jurisdiction of courts of equity, on the information of the proper public officer in behalf of the public, to restrain the erection or continuance of a public nuisance is well settled. *Mayor and Council of Columbus* v. *Jaques*, 30 *Ga.* 506; *Lofton* v. *Collins*, 117 *Ga.* 434.

*Judgment affirmed. All the Justices concur, except Candler, J., absent.*