PUBLIC SERVICE COMMISSION, SECOND DIST., v. BOOTH.

(Supreme Court, Appellate Division, Third Department.    December 3, 1915.)

1. LICENSES ⊚⟶1—CONSTRUCTION—PROPERTY RIGHTS—"PROPERTY."

A license from the state or municipality is not a contract, but a temporary permit to do what otherwise would be unlawful, and creates no property right, nor is it in itself "property."

[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 1; Dec. Dig. ⊚⟶1.

For other definitions, see Words and Phrases, First and Second Series, Property.]

2. LICENSES ⊚⟶6—MUNICIPALITIES—POWER TO GRANT.

Under Laws 1907, c. 755, § 86, granting to the city of Rochester the power to regulate hackmen and vehicles transporting people for hire, it is within the power of the common council to grant a license to an operator of a jitney bus.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 5, 6, 19; Dec. Dig. ⊚⟶6.]

3. CONSTITUTIONAL LAW ⊚⟶63—LEGISLATIVE POWER—DELEGATION.

The Legislature under its police power may, in providing for the safety and welfare of the public, make laws regulating the operation of vehicles upon the city streets as public conveyances, and that power cannot be delegated.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 108–114; Dec. Dig. ⊚⟶63.]

4. CARRIERS ⊚⟶2—REGULATION OF JITNEY BUSSES—POLICE POWER OF LEGISLATURE.

It is within the police power of the Legislature to regulate jitney busses upon city streets upon considerations of public safety, due to the promiscuous operation in all directions of the busses, thereby endangering the public safety.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 4, 5; Dec. Dig. ⊚⟶2.]

5. CARRIERS ⊚⟶2—REGULATION—POLICE POWER OF LEGISLATURE—"COMMON CARRIER."

Laws 1915, c. 667, § 25, providing that any person who operates any vehicle on city streets for hire shall be a common carrier, and required to obtain a certificate of convenience and necessity for the operation of the vehicle, and section 26, requiring consent of the local authorities to operate subject to their supervision, apply to all vehicles within their terms, whether previously licensed by the city or not, upon the grounds that public safety requires it, and because their terms expressly include all vehicles.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 4, 5; Dec. Dig. ⊚⟶2.

For other definitions, see Words and Phrases, First and Second Series, Common Carrier.]

6. STATUTES ⊚⟶235—CONSTRUCTION—PUBLIC SAFETY STATUTES.

A law enacted for the safety and protection of the public must be so construed as to secure to the public the benefit of full enforcement.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 316; Dec. Dig. ⊚⟶235.]

7. CONSTITUTIONAL LAW ⊚⟶208—DISCRIMINATION—REGULATION OF CARRIERS—JITNEY BUSSES.

Laws 1915, c. 667, § 25, making all vehicles operated for hire common carriers, and requiring all those charging a fare of 15 cents or less to

first secure the consent of local authorities to operate, is not unconstitutional, as discriminating arbitrarily between classes, since the jitney, attempted by those sections to be regulated, has distinct functions, and its operation is different from that of any other carrier.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 649–677; Dec. Dig. ☞208.]

Appeal from Special Term, Ulster County.

Action by the Public Service Commission of the Second District against Elmer G. Booth. From an order enjoining defendant's operation of a jitney bus (155 N. Y. Supp. 568), he appeals. Affirmed.

This is an appeal by the defendant from an order made at the Ulster County Special Term, and entered in the office of the clerk of Albany county on the 28th day of September, 1915, enjoining the defendant from operating a motor jitney bus carrying passengers for hire in the city of Rochester, unless and until he shall procure the assent of the local authorities of said city and the certificate of public necessity and convenience from the Public Service Commission, Second District, as required by sections 25 and 26 of the Transportation Corporations Law, as amended May 22, 1915, by chapter 667 of the Laws of 1915.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Richard R. B. Powell, of Rochester, for appellant.
Ledyard P. Hale, of Albany, for respondent Commission.

JOHN M. KELLOGG, P. J. In consideration of $1, the city of Rochester, on the 3d day of March, 1915, granted to the defendant a license permitting him "to carry on the business of public vehicle" within the city until December 31, 1915. While he was operating his motor jitney bus under that license, chapter 667 of the Laws of 1915 became effective, May 22d. He continued to operate his bus, claiming that the statute did not apply to him, as he had a license from the city, and this action results.

[1] Licenses from the state or a municipality are ordinarily to be considered, not as contracts, but as temporary permits to do what otherwise would be unlawful, and are not property in any legal or constitutional sense. Metropolitan Board of Excise v. Barrie, 34 N. Y. 657; People ex rel. Lodes v. Dept. of Health, 189 N. Y. 187, 82 N. E. 187, 13 L. R. A. (N. S.) 894.

[2, 3] By the charter and ordinances of the city of Rochester a hackman or vehicle for transporting people from place to place for hire cannot operate in the city without a license, and the common council had power to grant such a license by section 86 of the charter of said city. Chapter 755, Laws of 1907. The only effect of the license was to make legal that which without it would be illegal. The Legislature of the state, therefore, under the police power, in providing for the safety and welfare of the public, may make laws defining what vehicles may be operated in the cities as public conveyances, and the terms of operation. The Legislature cannot bargain away the police power of the state.

[4] We do not understand that the power of the Legislature to declare all jitney busses common carriers, and to require that they shall not operate without the certificate of the Public Service Commission as to convenience and necessity, is seriously questioned in this case. The contention is that the terms of the act indicate that it has no application to busses already operating under city license, and that it does not interfere with the existing contracts or vested rights. But we have seen that there are no existing contracts or vested rights under such a license, and that its effect is merely to permit the business to be carried on. From the fact that between January 1 and May 22, 1915, 737 licenses for jitneys or similar busses were granted in the city of Rochester, we may infer that it is a traffic of sudden and rapid growth, and that somewhat similar conditions exist throughout the state. These jitneys operate upon any part of the street, and are not confined to a fixed track and, it is evident that, when they are seeking fares in competition with the street cars and other busses, some regulation is necessary to protect the passengers and the public from careless driving and improper operation. It is evident that the Legislature, in passing the statute in question, had in view the protection of the public from the dangers incident to the traffic, and also the fact that these busses, carrying passengers for a small fare, come directly in competition with the street cars, which can only be operated under a certificate of convenience and necessity and the reasonable regulations of the Public Service Commission.

[5] There is no difficulty in determining that the Legislature, within the police power, had the right to make this law. If the enactment of the statute was necessary, it was also necessary that it should have force at once, and as to all busses of this class. The mere fact that a bus had received a license from the city before the enactment of the statute made it no less dangerous to the public than one which had no such license. There is no good reason why the statute should apply to the unlicensed bus any more than to one having a license.

[6] A law enacted for the safety and protection of the public should be so construed that the public may have the benefit of its full enforcement wherever its interests are threatened. The language of the statute seems to leave no doubt that it applies to all busses of the kind, no matter whether they were under a previous license or not. The expression in the twenty-fifth section of the Transportation Corporations Law, "Any person or any corporation who owns or operates a stage route, bus line or motor vehicle line or route  *  *  *  shall be deemed to be included within the meaning of the term 'common carrier,'" etc., evidently refers to every stage route or line, and the expression in the twenty-sixth section that no bus line shall operate, except upon the conditions mentioned therein, clearly applies to every bus. We see that not only the language of the law, but the very purpose for which it was enacted, compels the construction that it is intended to apply to all such busses operated in cities, without regard to whether they had or had not received a prior city license.

[7] It is further urged that this statute, relating only to busses which charge 15 cents or less, discriminates between them and busses charg-

ing a higher rate, and that there is no reasonable ground for the statutory discrimination, that the satute permits a bond to be required for the safety, not only of the passengers, but the public, when like provisions are not made with reference to other vehicles operated for hire, and that the statute imposes a tax upon the jitney which is not imposed upon other vehicles carrying passengers for hire, and that these discriminations are illegal and in violation of the defendant's constitutional rights.

Many circumstances exist which place the jitney in a different class from the motor vehicle which carries passengers by the hour, or from one fixed place to another. The jitney, by reason of its low fare and the manner of its operation, comes in direct competition with the street cars which are common carriers and require a certificate of convenience and necessity. The jitney, by moving rapidly from place to place upon either side of the street, in picking up passengers in competition with the street cars or other jitneys, presents a menace to its passengers and the people upon the street which is greater than that from the ordinary cab or vehicle; and other reasons may have seemed to the Legislature to require that these busses be put in a class by themselves. We cannot say that the classification is unreasonable; upon the contrary, it seems reasonable.

We conclude, therefore, that the statute in question is valid, and prevents the operation of the appellant's bus until he complies with its terms. The injunction was therefore properly granted, and the order is affirmed, with costs.