## SCHLESINGER et al. v. CITY OF ATLANTA.

1. The use of streets and highways is not absolute and unrestricted, but is subject to reasonable regulation.
2. Individuals do not have the inherent right to conduct their private businesses in the streets of a city, and the State or city can prohibit the owners or operators of jitneys and busses from transporting passengers for hire in such vehicles upon the streets of a city.
  (a) The transportation of passengers for hire in such vehicles or otherwise is a privilege which the State or the municipality can give or withhold.
  (b) The due-process and equal-protection clauses of the Federal and State constitutions protect rights alone, and have no reference to mere concessions or mere privileges which may be bestowed or withheld by the State or municipality at will. Discrimination in the grant of favors is not a denial of the equal protection of the law to those not favored.
  (c) If there is a demand for the service rendered by jitneys and busses, the remedy for the prohibition of such service by the mayor and general council of the City of Atlanta is political, and not judicial.
3. The imposition by the legislature of a tax upon an occupation subject to prohibition under the police power, and the payment thereof, will not prevent a city from prohibiting the conduct of such business in its streets, where individuals have no right to carry on such business in the streets.
4. This ordinance does not violate par. 2 of sec. 2 of art. 4 of the constitution of this State.
5. The other attacks upon its constitutionality are without merit.
6. As individuals have no right to transport passengers for hire in jitneys or busses on the streets of a city, and as a city can prohibit wholly or partially the conduct of such business in its streets, if the city sees fit to grant permission to individuals to conduct such business in its streets, it can prescribe such terms and conditions as it may see fit, and individuals desiring to avail themselves of such permission must comply with such terms and conditions whether they are reasonable or unreasonable.
7. Whether section 1 of this ordinance is unreasonable and void is not decided, because it is now moot, as under the undisputed evidence the licenses revoked by this section of this ordinance had all expired prior to the hearing of the application for injunction.
8. All persons who are willing to comply with the terms and conditions of this ordinance are entitled to permits or licenses to engage in the business of transporting passengers in jitneys or busses for hire, and denial of such permits or licenses to such persons would amount to a denial of the equal protection of the law. Any such applicant can enforce his right to such permit or license by mandamus.

No. 4864. SEPTEMBER 23, 1925.

Petition for injunction. Before Judge Bell. Fulton superior court. March 21, 1925.

On February 6, 1925, the mayor and general council of the City of Atlanta adopted an ordinance governing motor busses and jitney

busses. The first section of this ordinance abolished and revoked all existing rights and permits for the operation, on the streets of Atlanta, of any motor busses, jitneys or jitney busses, as defined in the ordinance of the city adopted by the mayor and general council on April 13, 1919, and approved by the mayor on April 23, 1919, for the "licensing and regulating of motor busses" in the City of Atlanta, said abolition and revocation to take effect from and after thirty days from the approval of the ordinance. The second section of this ordinance provides that "No permit shall be granted or issued for the operation of, and it shall be unlawful to operate, any 'motor bus,' 'jitney' or 'jitney bus,' as defined in said ordinance, upon any street, public place, or part thereof, in Atlanta, the route or routes of which shall include, in whole or in part, any street or streets upon which the tracks of any street-railway are laid, and upon which cars are operated." The third section declares that "No permit shall be granted or issued for the operation of, and it shall be unlawful to operate, any 'motor bus,' 'jitney' or 'jitney bus,' as defined in said ordinance of 1919, upon any street or public place or part thereof, the route or routes or proposed route or routes of which shall include, in whole or in part, any street or streets for a distance of more than five blocks in its round trip, parallel to and within two blocks of any street upon which the tracks of any street railway are laid and upon which street cars are operated." Section four provides that "It shall be unlawful to operate any 'motor bus,' 'jitney' or 'jitney bus,' as defined in said ordinance of 1919, on or over any street or part thereof not included in the permit therefor, and no change, except temporarily for the purpose of avoiding obstructions, shall be made in the route designated in the permit." Section five provides "That no permit or license shall hereafter be granted or issued for the operation as a 'motor bus,' 'jitney' or 'jitney bus,' as defined in said ordinance of 1919, along or upon any of the streets of this city, of any automobile, motor bus, truck or other trackless vehicle, with a seating capacity of less than seventeen .(17) passengers." Section six makes it unlawful, from and after thirty days from the approval of this ordinance, for any person to drive or operate, or cause to be driven or operated, as a "motor bus," "jitney" or "jitney bus," as defined in said ordinance of 1919, upon or along any of the streets of the city, any automobile, motor bus, truck, or

other trackless vehicle of a seating capacity of less than seventeen (17) passengers. Section seven requires that each person, firm, or corporation, or association of persons operating any "motor bus," "jitney" or "jitney bus," as defined in this ordinance, or in such ordinance of 1919 and the amendments thereof, shall, before the same are placed in operation and before the issuing of the license therefor, file with the city clerk of Atlanta, for each "motor bus," "jitney" or "jitney bus," a liability insurance policy for injury to persons or property, as follows: For any person injured in the operation of said car, for loss or damage, up to the amount of $10,000; for injury or damage to any person caused in any one collision or accident up to an amount not exceeding $50,000; for injury or damage to property of any kind in any accident or collision, up to and not exceeding $1,000.

Section eight provides: "All licenses, certificates, permits, and approval of routes, at any time issued or granted by and on behalf of the City of Atlanta, shall be subject to the right, on the part of the mayor and council, from time to time to make or adopt any ordinances, resolutions, or regulations further controlling, regulating, and governing the operation of 'motor busses,' 'jitneys' and 'jitney busses,' or prescribing additional and other terms, conditions, license fees, of other and similar kinds and character for such business or the operation thereof, or changing, modifying, or withdrawing, in whole or in part, the approval of any right or rights for the operation of 'such vehicles' as may in the judgment of the mayor and general council be consistent with the requirements of the public welfare and within" their power. Section nine makes it unlawful, after thirty days from the approval of the ordinance, for any person to drive or operate, or cause to be driven or operated, any "motor bus," "jitney" or "jitney bus," as defined in said ordinance of 1919, within the congested area of the city, which is defined to be the fire limits as set out in section 3 of the building code. From and after thirty days from the approval of the ordinance it is made unlawful for any person to drive or operate, or cause to be driven or operated, any of said vehicles, upon Peachtree Street, Whitehall Street, Marietta Street, Decatur Street, North Pryor Street, South Pryor Street, Edgewood Avenue, Luckie Street, Ivy Street, Lucile Avenue, Highland Avenue, Stewart Avenue, and Georgia Avenue; and said section revokes all

permits theretofore issued·authorizing the operation of said vehicles within said limits or upon said streets or any portion of said limits of said streets. . By section ten the mayor and general council reserve the right when, and if the needs of the public necessity and convenience require it, to authorize, within the limits and upon the streets defined in section nine, the operation of any of said vehicles, provided the application for such permits, showing the size, character, number of proposed vehicles to be operated, and the routes desired, are such as meet with the approval of said body, and provided further that the persons applying for the same shall comply with the provisions of sections five and seven of this ordinance. Section eleven imposes a fine not exceeding $200, or work upon the public works of the city not exceeding thirty days, either or both, in the discretion of the recorder, for any person, firm, or corporation violating any of the provisions of this ordinance. Section twelve repeals conflicting ordinances, and provides that if any section, part, or clause of this ordinance shall for any reason be held invalid, the same is declared to be severable, and the remainder thereof shall be deemed to be valid and given such effect and construction as if the invalid portion had not been included in the ordinance.

On March 6, 1925, plaintiffs filed their equitable petition against the City of Atlanta, to enjoin the enforcement of the above ordinance. In substance they make these allegations: They are the owners and operators of jitney busses which they use for the transportation of the public for hire, over the streets of Atlanta. Fifty of them are the holders of paid licenses issued by the city for the operation of jitney busses. The cars which they operate are from five to seven passengers, with the exception of a seventeen-passenger bus operated by one of them. Twenty-two of the plaintiffs are engaged in the operation of smaller cars under soldier licenses. Three of the plaintiffs are operators of busses from seventeen to thirty-five passengers. They operate one hundred ten cars of seven passengers or less. Six of them operate busses from seventeen to twenty passengers. They have complied with all of the ordinances of the city in force up to February 6, 1925. Each has filed with the City of Atlanta a bond and policy of insurance for the protection of their passengers and the public, said policies being·payable to the city, upon which suit can be brought in the

name of the city for the use of any person who sustains injury by reason of the operation of said jitneys. Said bonds were filed and approved by the clerk as required by the ordinance of the city. Each of the plaintiffs has paid money for the policy and bond. Plaintiffs are the holders of permits of the city for the operation of said jitney busses, which will not expire before March 8, 1925. They carry on a legitimate business, that of public transportation. Said business has been distinctly recognized by the State, and a specific license of $15 per annum is required of them by the State for the operation of said business. Said licenses have been paid for the year 1925. The jitney bus business is distinctly recognized as a lawful business by the United States government. A license is required of them by that government, in payment of a government tax of $10 per annum. Plaintiffs have complied with the requirements of that government, and are legally entitled to carry on their business under the laws of the United States.

In the City of Atlanta street-car service is furnished by the Georgia Railway & Power Company. The tracks of said company occupy all of the leading streets of the city. No service can be furnished by plaintiffs or any one else that does not come, more or less, in competition rendered by said company, and no service can be rendered by the plaintiffs to the people of Atlanta except by running over the streets that are occupied in whole or in part by the street-car lines of said company. The lines of travel over which the public desires transportation, in the main, are from the outlying residential districts to the business center of the city. All the business streets of the city are occupied by the lines of said company. Plaintiffs furnish a character of transportation which the street cars do not and can not furnish. **Jitneys move quicker** than the street cars. They stop quicker than the street cars. They can go around obstructions. They can transport passengers in about one half the time required by the street cars. This service is in great demand. The time saved their patrons is valuable. The city permits those who own cars to furnish their own transportation without restriction. They can drive along any of the streets of the city at any time, and are allowed to park their cars on most of the streets. The patrons of plaintiffs are not able to own cars and furnish their own transportation, but are compelled to buy seats for transportation in said cars. To withhold from

them the right to do so is an unfair discrimination. The service rendered by plaintiffs is more dependable than that rendered by the street cars. The street cars are dependent upon electric power for their operation. Any breakdown in the electric plants of transmission system puts the whole railway system out of commission for a period of time. It often happens that the entire street-car system is stopped. At times this happens at the hour of the day when the demand for transportation. is greatest. There has been carried on in the city by the street-railway company a persistent campaign to put plaintiffs out of business. It has been carried on ostensibly for the purpose of preventing competition between jitney busses and the street cars, but it is now disclosed that the · street-railway company, recognizing the economic change that has come over the country, has itself gone into the jitney-bus business. It is the purpose of said company to monopolize the jitney busses for themselves. Permits have already been granted to said company for carrying out this purpose, and permits will be granted by the mayor and general council to said company whenever it requests that it be done.

The plaintiffs attack said ordinance upon the ground that it is beyond the power of the city to arbitrarily revoke permits and licenses to do business, except upon good cause shown and after fair notice and trial had. The licenses of the plaintiffs to operate their jitneys in the City of Atlanta were revoked by said ordinance without cause shown and without notice and opportunity to be heard. The purpose. of said ordinance was to prohibit entirely the jitney-bus business. The enforcement of said ordinance absolutely eliminates all jitney-bus operation. A number of plaintiffs operate busses of seventeen passengers or more. These petitioners have applied to the mayor and general council for the privilege of operating under this last ordinance, and in territory which is not served by the street-car lines. They mayor and general council have, regardless of the merits of the case and the wishes of the public, at the instance of the street-railway company, refused their permits. These plaintiffs have offered to comply in all respects with the city ordinance. At the present time plaintiffs are operating under policies filed with the City of Atlanta to cover the liability of $5,000 for any accident, $2,500 for any individual personal loss, and $1,000 for any individual property damage; there

has been no complaint from the public on account of this insurance. The liability insurance required by section seven of said ordinance is far beyond the necessity of the case. It is required for the purpose of making it so burdensome to jitney owners, and so difficult to obtain, that it will be impossible for them to offer as possible competitors of the street-railway company. All of said ordinance and each section thereof is unreasonable, unfair, unjust, discriminatory, and null and void. It is not an honest declaration of legislative policy. It is impossible for petitioners to operate under the same. Those plaintiffs who have busses which are permitted to operate can not secure the permits, because such permits have to be secured not so much from the city as from the street-railway company.

Said ordinance and each section thereof is in violation of article 1, section 1, paragraph 2, of the constitution of this State, which provides that protection to person and property is the paramount duty of government and shall be impartial and complete; of article 1, section 1, paragraph 3, of said constitution, which provides that no person shall be deprived of life, liberty, or property, except by due process of law; of article 1, section 3, paragraph 2, of said instrument, which provides that no law impairing the obligation of contracts shall be passed; of article 4, section 2, paragraph 2, of said constitution, which provides that the exercise of the police power of the State shall never be abridged nor so construed as to permit corporations to conduct their business in such a manner as to infringe the equal rights of individuals or the general well-being of the State; of the fourteenth amendment to the constitution of the United States, and of article 1, section 10, of said constitution.

Petitioners pray that the City of Atlanta be enjoined from enforcing said ordinance and from making any prosecutions against petitioners thereunder, and that the city be enjoined from withholding from petitioners any license permits, or any other recognition that will prevent them from carrying on their operations as jitney-bus operators, if they comply with the other laws of the city; and that said ordinance and each section thereof be declared to be unreasonable, unconstitutional, unjust, discriminatory, and null and void.

In its answer the city admitted that the licenses held by the plaintiffs were revoked by the mayor and general council on Feb-

ruary 6, 1925, to become effective thirty days after date. The city admits that certain of the petitioners have permits for the operation of jitney busses, which would have expired on March 31, 1925, by their terms. It likewise admits that plaintiffs are engaged in the public transportation of passengers for hire, but denies that such business is carried on by plaintiffs as a business in the sense that petitioners have the inherent right to carry it on in the public streets of the city without the permission of the city. It denies that the business of petitioners has been distinctly recognized by the State of Georgia or the United States government. It denies that the payment of $15 license tax per annum to the State, or $10 per annum to the United States government, entitles plaintiffs to carry on their business. Said business is a public transportation of persons for hire by plaintiffs as a common carrier, and plaintiffs are using the public streets of the city and public highways of the State as a place of carrying on their business. They have no other place of business. Said streets were dedicated originally and are primarily devoted to the use of the general public for the purpose of travel and enjoyment in the ordinary course of life and business and as incidental to their regular business, and no person has any right to use such streets except by virtue of a special franchise granted by the authorities in charge of said streets. Plaintiffs have no such special franchise. Prior to February 6, 1925, plaintiffs had from the city permits to conduct on said streets their business as common carriers of passengers for hire. Said licenses were on February 6, 1925, to become effective March 8, 1925, legally revoked by the mayor and general council. The city denies that there is no service which petitioners can give except by running over the streets occupied by the street-car lines of the Georgia Railway & Power Company. It may be true that the lines of travel over which the public desires transportation in the main are from the outlying residential districts to the business center of the city, and vice versa, and that most of said streets are occupied by the tracks of said street-railway company. Said company is authorized to occupy said streets under a special franchise from the city. Any alleged benefit from transportation furnished by plaintiffs is more than counterbalanced by the greatly increased congestion, inconvenience, and danger of said service. The use of said streets is not unrestricted even when used for the original purposes for

which they were dedicated, and such use is subject to the police power of the city as the governing body in control thereof, and various restrictions are and can be imposed upon such use of the streets by the general public. Plaintiffs have no inherent right to use said streets as their sole place of conducting their business of transporting passengers for hire.

It is admitted there has been for a long time a general discussion of what is known as the local transportation problem of the city, including the use of jitneys as a part of public transportation. This has not been a political campaign, and the same has not been carried on by the street-railway company. The latter has participated in said public discussion of said problem. Various other civic and business institutions have been active in arranging relief by legislation at the hands of the city. The Federation of Trades, labor unions, Chamber of Commerce, Lions Club, the Civitans, and other public bodies have been insisting upon such legislation for such relief. The rapid increase of population in the city and its suburbs, the narrow streets of the city, the increased use of automobiles and trucks, and the great congestion in the center of the city, render necessary measures for the relief of such congestion and the reduction of risk and danger to the life and limbs of the people. On January 1, 1925, no fewer than 230 jitneys of all classes were in daily operation in the congested streets of the city. Of those, 30 were busses. They were owned in separate units. They selected their own routes. They ran only where the population was densest and the traffic was heaviest. Their owners and operators were for the most part financially irresponsible. In the scramble for business they would race along the streets in an effort to get ahead of each other and ahead of the street cars. They would stop in the streets to receive and discharge passengers. They impede the movement of street cars and other traffic. They add greatly to the danger to life and limb. This made it necessary for the city to consider and adopt plans for using the street facilities most effective. To this end the city employed the Beeler organization, a competent, experienced engineer, who had made similar studies in other cities, to make an investigation and study of the conditions in Atlanta affecting its local traffic and transportation conditions, and to make a report of the same. This engineer recommended the elimination of jitney busses. In December,

1923, the mayor and council of the city ordered a special committee to make a like study, and to report rules, regulations, and plans, to correct the conditions, meeting the needs and requirements to protect the public welfare, comfort, and convenience. This committee held meetings in which the general public were invited and given an opportunity to be heard, including the plaintiffs and their representatives. As a result of such study and such special committee, and with the aid of such engineering firm, said committee reported the ordinance adopted and approved by the mayor and council on February 6, 1925, of which the plaintiffs complain. In the interest of the conservation of the effective use of the limited street space, and the protection to life and limb, it is necessary to prohibit the operation of jitney busses on the streets of Atlanta on which the street-car tracks are laid and street cars are operated.

Fire limits of the city comprise its congested district. Traffic in this district is very congested. Through it move all vehicles, public and private. It is already difficult for vehicles to move through this district. It is necessary to facilitate the movement of vehicles through it. It is particularly necessary in the public interest that congestion of street traffic be removed as far as is reasonably practicable, and that no impediment to the movement of traffic or fire apparatus in this district should be permitted for any reason not required by the public interest and convenience. The operation of jitneys in this district adds greatly to the congestion, impedes traffic, is liable to interfere with the movement of fire apparatus, and adds to the risk of conflagration therein. The city denies that said ordinance violates the provisions of the constitution of this State or the United States in the ways as alleged.

On the hearing the plaintiffs sought to prove that they were each holders of a permit of the City of Atlanta to operate their several jitneys, under the ordinances of the city existing prior to February 6, 1925, and have paid their licenses and taxes due the city, the State, and the United States government; and that they have also given the bonds or policies of insurance that have been required by the city under previous ordinances. The court stated that he understood that the plaintiffs were all entitled to operate their business under this previous ordinance, and that he would not require plaintiffs to introduce this evidence.

*Key, McClelland & McClelland,* for plaintiffs.

*James L. Mayson, Jesse M. Wood,* and *Colquitt & Conyers,* for defendant.

HINES, J. 1. The use of streets and highways is not absolute and unrestricted. Such use is subject to reasonable regulation by the public. So the operators of jitneys or busses on streets have been subjected to more or less stringent regulations. They can be required to give bonds to indemnify persons for injuries to their persons or property growing out of the negligent operation of these vehicles, and to pay larger license fees than those imposed upon operators of taxicabs, and graded according to the seating capacity of the vehicles employed. *Hazleton* v. *Atlanta,* 144 *Ga.* 775 (87 S. E. 1043) ; Donella *v.* Enright, 195 N. Y. S. 217. They may be required to select the routes on which they will operate, and to maintain regular schedules. Greene v. San Antonio (Tex. Civ. App.), 178 S. W. 6; Ex parte Lee, 28 Cal. App. 719 (153 Pac. 992). The State may declare jitney busses operating in cities to be common carriers, and require operators to secure from the Public Service Commission certificates of public convenience and necessity. Public Service Commission *v.* Booth, 170 App. Div. 590 (156 N. Y. Supp. 140) ; Public Service Commission *v.* Hurtgan, 91 Misc. 432 (154 N. Y. Supp. 897) ; Thielke *v.* Albee, 79 Ore. 48 (153 Pac. 793). So many other regulations of the use of streets and highways are permissible. Hendrick *v.* Maryland, 235 U. S. 610 (35 Sup. Ct. 140, 59 L. ed. 385).

2. But can the City of Atlanta absolutely prohibit the operation of jitneys and motor busses, as common carriers, within its fire limits, and upon all streets in which street-railway tracks are laid and upon which street cars are operated? The contention of counsel for plaintiffs is that the business of so conducting jitneys and motor busses on the streets of the City of Atlanta is a lawful one, and that their inherent right as common carriers to transport passengers for hire in such vehicles can not be absolutely denied. Undoubtedly the right of individuals to engage in the ordinary occupations of life can not be prohibited by the State or municipality. All men are by nature equally free and independent. They have certain inherent rights, such as the enjoyment of life and liberty, the pursuit of happiness, the means of acquiring and possessing property, and of engaging in lawful occupations in lawful ways for the purpose of making a livelihood, of which, when they

enter into a state of society, they can not be deprived. The right to use one's own property as he sees fit, so long as he does not thereby injure others, and to engage in lawful occupations in proper places and at proper times, is a right which not even the legislative power of the State can take from the individual. The right to make a living is among the greatest of human rights, and when lawfully pursued can not be denied. Yick Wo *v.* Hopkins, 118 U. S. 356 (6 Sup. Ct. 1064, 30 L. ed. 220); Gulf &c. R. *v.* Ellis, 165 U. S. 150 (17 Sup. Ct. 255, 41 L. ed. 666); Eubanks *v.* Richmond, 226 U. S. 137 (33 Sup. Ct. 76, 57 L. ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 1123); Myer *v.* Nebraska, 262 U. S. 390, 399 (43 Sup. Ct. 625, 67 L. ed. 1042, 29 A. L. R. 1446). But this principle has no application to the inhibition of that which the individual has no natural or inherent right to do. If the individual has no such inherent right to conduct the business of a common carrier by jitneys or busses upon the streets of the city, his case does not fall within this principle. In such a case the conduct of such business can be inhibited.

This brings us to determine the serious question in this case, which is, whether or not individuals doing business as common carriers have the inherent or natural right to use the streets of the city for transportation for hire of passengers, in motor vehicles or otherwise. "A highway is a way open to all the people." *Southern Ry. Co.* v. *Combs*, 124 *Ga.* 1004 (53 S. E. 508). This court has adopted this definition of the term: "A highway is a public way open and free to any one who has occasion to pass along it on foot or with any kind of vehicle." *A. & W. P. R. Co.* v. *A., B. & A. R. Co.,* 125 *Ga.* 529, 545 (54 S. E. 736). "A street is a highway in a city or town, used by the public for the purpose of travel, either by means of vehicles, or on foot." Id. Streets and public places belong to the general as well as the local public. *Simon* v. *City of Atlanta,* 67 *Ga.* 618 (44 Am. R. 739). From the premise that streets belong to the public the conclusion is drawn that individuals have the right to use the streets of a city for the purpose of transporting passengers for hire. This conclusion does not properly follow from this premise. The fact that the streets belong to the public does not authorize individuals to use them for all purposes. Without express legislative authority a city can not grant to any person the right to erect or maintain a structure or obstruction in

a public street. Civil Code (1910), § 894. So this court has held that the City of Augusta could not grant to an individual the right to hold a fair or carnival on the streets of that city. *City Council of Augusta* v. *Reynolds,* 122 *Ga.* 754 (50 S. E. 998, 69 L. R. A. 564, 106 Am. St. R. 147). The primary purpose of streets is for passage and travel, and they are primarily intended for the use of travelers. *Simon* v. *City of Atlanta,* and *City Council of Augusta* v. *Reynolds,* supra. Streets and highways are not intended to furnish places of business to individual members of the public. An individual can not maintain a place of business on a public road, and a permanent structure thereon for such purposes, which materially interferes with travel thereon, is a nuisance per se, which a court of equity will enjoin. *Rider* v. *Porter,* 147 *Ga.* 760 (95 S. E. 284). In *Cottle* v. *Wilkes,* 141 *Ga.* 499 (81 S. E. 201), this court affirmed a judgment enjoining the hauling of large sawmill logs on two-wheel carts over public roads and bridges, whereby the roads were cut into ditches and gullies and the bridges broken. It will be noted that the use, and not the abuse, of the roads and bridges was restrained. In Commonwealth *v.* Stodder, 2 Cush. 562 (48 Am. D. 679), the Supreme Court of Massachusetts upheld an ordinance of the City of Boston, which prescribed the streets upon which omnibuses might be operated, and which excluded them from the use of other streets. In Commonwealth *v.* Kingsbury, 199 Mass. 542 (85 N. E. 848, L. R. A. 1915E, 264, 127 Am. St. R. 513), the same court held that "The legislature has the right, acting under the police power, to prescribe that automobiles shall not pass over certain streets . . in a city or a town." The Supreme Court of Maine, in Maine *v.* Mayo, 106 Me. 62 (75 Atl. 295, 26 L. R. A. (N. S.) 502, 20 Ann. Cas. 512), held that an ordinance passed under express legislative authority, closing to the use of automobiles certain public streets in a town, and the legislative act authorizing the town to close such streets for such purposes, were not repugnant to any constitutional provision. In Fifth Ave. Coach Co. *v.* New York, 221 U. S. 468 (31 Sup. Ct. 709, 55 L. ed. 815), the Supreme Court of the United States held that an ordinance of the City of New York, prohibiting advertising vehicles on the streets of the borough of Manhattan, was not unconstitutional as denying equal protection to the owners of such vehicles, either because under the ordinance signs of the owners of business wagons

may be displayed thereon, or because another transportation company may display advertising signs on its structure. That court said: "There is a purpose to be achieved as well as a distinction which justifies the classification."

The streets of a city belong to the public and are primarily for the use of the public in the ordinary way. The ordinary use of the streets, as we have seen above, is for travel; and to this may be added transportation of goods by their owners to and from their residences or places of business. Transportation of travelers or goods by common carriers for hire does not fall within the ordinary way in which streets are used. Their use for the purpose of gain is special and extraordinary, and may be prohibited or conditioned as the legislature or municipality deems proper. The conduct of the business of a carrier of passengers for hire over the streets of a city is a mere privilege, and not a natural or inherent right of the individual conducting such business. Being a privilege, it can be given or withheld; and may be given to members of one class and denied to those of another class. If the State or city determines that the use of the streets for private purposes in the usual and ordinary manner shall be preferred over their use by common carriers for hire, there is nothing in the constitution of the United States or this State which prohibits such action. This principle seems bottomed on sound reasoning, and is well settled by a great majority of the courts of last resort in this country. Packard *v.* Banton, 264 U. S. 140 (44 Sup. Ct. 257, 68 L. ed. 596); Huston *v.* Des Moines, 176 Iowa, 455 (156 N. W. 883); Greene *v.* San Antonio, supra; Hadfield *v.* Lundin, 98 Wash. 657 (168 Pac. 516); Ex parte Dickey, 76 W. Va. 576 (L. R. A. 1915F, 840, 85 S. E. 781); Lutz *v.* New Orleans, 235 Fed. 978 (4); Curtrona *v.* Wilmington (Del. Ch.), 124 Atl. 658, 661; Taylor *v.* Smith (Va.), 124 S. E. 259; People *v.* Martin, 203 App. Div. 423 (197 N. Y. Supp. 28); Memphis *v.* State, 133 Tenn. 83 (179 S. W. 631, L. R. A. 1916B, 1151, Ann. Cas. 1917C, 1056); Melconian *v.* Grand Rapids, 218 Mich. 397 (188 N. W. 521); People *v.* Rosenheimer, 209 N. Y. 115, 120 (102 N. E. 530, 46 L. R. A. (N. S.) 977, Ann. Cas. 1915A, 161); Pub. Service Com. *v.* Booth, 170 App. Div. 590 (156 N. Y. Supp. 140); Lane *v.* Whitaker, 275 Fed. 476, 480; Huddy on Automobiles (7th ed.), § 765; *Cutsinger* v. *Atlanta,* 142 *Ga.* 555, 556 (83 S. E. 263, L. R. A. 1915B, 1097, Ann. Cas. 1916C,

280) ; Carson v. Woodram, 95 W. Va. 197 (120 S. E. 512) ; Burgess v. Brockton, 235 Mass. 95 (126 N. E. 456) ; City of New Orleans v. Calamari, 150 La. 737 (91 So. 172, 22 A. L. R. 106) ; Babbit on Automobiles (3d ed.), § 211; Desser v. Wichita, 96 Kan. 820 (153 Pac. 1194, L. R. A. 1916D, 246) ; Star Trans. Co. v. Mason City, 195 Iowa, 930 (6) (192 N. W. 873) ; McGlothern v. Seattle, 116 Wash. 331 (6) (199 Pac. 457) ; Peters v. San Antonio (Tex. Civ. App.), 195 S. W. 989; Decker v. Wichita, 109 Kan. 796 (202 Pac. 89). There are some decisions to the contrary. Curry v. Osborne, 76 Fla. 39 (79 So. 293, 6 A. L. R. 108) ; State v. Dillon, 82 Fla. 276 (89 So. 558, 22 A. L. R. 227) ; City of Columbia v. Alexander, 125 S. C. 530 (119 S. E. 241, 32 A. L. R. 746) ; Jitney Bus Asso. v. Wilkes-Barre, 256 Pa. 462 (100 Atl. 954).

The due-process and equal-protection clauses of our Federal and State constitution are applicable to rights alone, and have no reference to mere privileges which may be bestowed or withheld by the State or municipality. The individual can not complain of discrimination in the grant of favors. But it is contended by counsel for plaintiffs that there is a public demand for the service rendered the public by jitney busses. Conceding such demand, the remedy of the public is not judicial but legislative. The public have been deprived of such service by themselves, acting through their representatives, the mayor and general council of the City of Atlanta. The remedy of the public is to appeal to that body for the repeal of this ordinance, if they wish this service restored; and, in the event that their appeal is denied by that body, then they can elect a mayor and general council who will grant them the relief which they seek. The restoration of such service is within the power of the people of Atlanta, if they desire it. The courts are without authority to act in this matter, if we are right in the position that plaintiffs have no right to conduct their business of common carriers in the streets of the city.

3. By an amendment of the general tax act of 1923 (Acts Ex. Sess. 1923, p. 20), the legislature imposed a tax on jitneys employed in transportation for hire, of $15 per annum for a five passenger car, and $25 per annum for every car of greater seating capacity. Acts 1924, p. 22. Each operator of such jitney is required to register with the ordinary and to pay to the tax-collector the amount of this tax, before he is authorized to operate such

vehicle; and the operation thereof without compliance with these conditions is made a penal offense. The plaintiffs registered and paid this tax. They insist that the imposition of this tax and its payment by them conferred upon them the right to operate. their jitneys on the streets of the city, and that the latter can not prohibit their operation. In support of this position counsel for plaintiffs rely upon *Miller* v. *Shropshire,* 124 *Ga.* 829 (53 S. E. 335, 4 Ann. Cas. 574). In that case this court held that where the General Assembly permitted one paying a license tax to engage in the business of buying and selling futures, such person should not be subjected to the penalty imposed by § 3671 of the Code of 1895, (§ 4256 of the present Code). The decision in that case was reviewed and explained in *Trammell* v. *Rome,* 142 *Ga.* 602 (83 S. E. 221). In explanation of their former decision this court said: "The court decided that inasmuch as the General Assembly had recognized the business of dealing in futures as legitimate by reason of the imposition of an occupation tax thereon, it could not be included in the category of gaming made criminal by the statute." The court expressly declined to extend the doctrine of the former case so as to support the contention now made by counsel for plaintiffs. On the contrary, the court held that the imposition of a tax upon an occupation subject to a regulation or prohibition under the police power would not prevent the legislature from thereafter authorizing a particular municipality to prohibit the carrying on of such occupation. We do not think that the imposition of such tax and its payment would prevent a municipality from exercising authority previously granted to regulate or prohibit a business so taxed. There is no such repugnance between such authority previously conferred by the legislature upon a municipality, and the passage of an act thereafter imposing such tax, as would have the effect of repealing the authority so conferred upon the municipality.

4. It is insisted that this ordinance offends that portion of paragraph 2 of section 2 of article 4 of the constitution of this State which declares that "The exercise of the police power of the State shall never be abridged, nor so construed as to permit corpo·rations to conduct their business in such a manner as to infringe the equal rights of individuals or the general well-being of the State." The first clause of this provision preserves in full force

and vigor the police power of the State, which has been declared to be "the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government." District of Columbia v. Brooke, 214 U. S. 138, 140 (29 Sup. Ct. 560, 53 L. ed. 941). The second clause of this provision declares that the police power shall not be so construed as to permit corporations to conduct their business in such a manner as to infringe the equal rights of individuals. The plaintiffs insist that this ordinance was passed for the benefit of the street-railway company, and for the purpose of giving to it a partial monopoly of the business of transporting passengers within the city limits, and that the effect of the ordinance is to infringe the equal rights which they possess with this company of engaging in such business. If we are right in holding that the business of transporting passengers for hire on the streets of the city is not a right but a mere privilege, then this contention is without merit. If the plaintiffs have no right to engage in this business on the streets of the city, then the fact that the street-railway company is permitted to engage therein does not infringe any right of the plaintiffs. The last clause of this provision of the constitution declares that the police power shall not be so construed as to infringe "the general well-being of the State." Does the inhibition of the operation of jitneys and motor busses within the fire limits of Atlanta, and upon streets upon which street-railway tracks are laid and on which street cars are operated, infringe the general welfare of the State? Is the determination of what is for the general welfare of the State a legislative or judicial question? The legislative power of the State is vested in the General Assembly. Civil Code (1910), § 6410. Our State constitution declares that "The General Assembly shall have power to make all laws and ordinances consistent with this constitution, and not repugnant to the constitution of the United States, which they shall deem necessary and proper for the welfare of the State." Civil Code (1910), § 6450. So it would seem that the power to determine what laws will promote the general welfare, when they do not conflict with the constitution of the United States or the constitution of this State, is lodged in the legislature and not in the courts. Otherwise the courts would declare unconstitutional legislative enactments which they do not think conducive to the general welfare, and thus usurp the province of the legislature.

Then of what force and effect is this constitutional provision? It is binding upon the members of the legislature. By their oaths they are sworn to support the constitution of this State, and this binds them to observe the injunction of this provision of the constitution. The courts can only interfere with legislation which conflicts with constitutional provisions. With the wisdom of legislation within constitutional limits the courts have nothing to do. So we can not say that this ordinance violates this provision of the constitution.

5. We think that the other attacks upon the constitutionality of this ordinance are without merit.

6. This ordinance is of a dual character. It is prohibitive in part and regulatory in part. Having held that the prohibitive part is valid and not unconstitutional, we now have to decide whether the regulatory features thereof are valid. Undoubtedly municipal ordinances which are intended to regulate lawful occupations and businesses must be reasonable. Otherwise they are void. But this principle is not applicable to the transportation of passengers for hire by the owners of jitneys and busses on the streets of a city. Such operators having no right to transact such business in the streets of a city, and as the cities can wholly prohibit the conduct of such business, if they see fit to grant permission for the conduct of such business on their streets, they can fix the terms and conditions upon which such business can be transacted; and permission to transact such business being a mere privilege or favor, the cities can name any terms and conditions which they may see fit, and the courts can not hold such terms and conditions unreasonable. The power to prohibit entirely such business upon the streets includes the authority to fix conditions upon which such business can be done.

7. The ruling in the seventh headnote requires no elucidation.

8. This ordinance has the force and effect of law. Being a law providing for the issuing of permits to the operators of jitneys and busses upon the terms and conditions therein specified, to this extent making the business of transportation by such vehicles upon the streets of the city lawful, all persons who are willing to comply with such terms and conditions are entitled to permits or licenses to engage in such business. To deny permits to those who are willing to comply with its terms and conditions would be an un-

constitutional administration of this ordinance. Such refusal would amount to a denial of the equal protection of the law. If the right of any applicant to a license or permit under said ordinance, who is willing to comply with the terms and conditions thereof, is denied by the city or its officials, such right can be enforced by mandamus.

9. Applying the above rulings, we affirm the judgment of the trial court refusing to grant an interlocutory injunction.

*Judgment affirmed. All the Justices concur, except Russell, C. J., dissenting.*