## McMASTER *v.* MAYOR & COUNCIL OF WAYNESBORO.

1. If a city should make a ten-year lighting contract without a popular vote authorizing the same, there would be no creation of a debt. Such an agreement would only be operative so long as neither party renounced or repudiated it.
2. If the ten-year contract alleged to be illegal had already been made, or if, as stated in the answer, the city was not threatening or preparing to make a ten-year contract, there was nothing to enjoin.
3. The fact that a gas or an oil lighting equipment already owned may be rendered useless and valueless is not sufficient to authorize a court to enjoin the city from making a contract to have the streets lighted by electricity.
4. The power to provide lights is derived from the charter, and not from popular vote. If, therefore, two thirds of the number registered did not cast their ballots in favor of the creation of a debt, that would not deprive the city of its original power to contract.
5. The business affairs of a municipality are committed to the corporate authorities, and the courts will not interfere except in a clear case of mismanagement or fraud.
6. The city had the right to provide lights, and nothing was shown to support the prayer of the petition that a writ of injunction issue restraining defendants from "making any contract whatsoever for electric lights with any person whomsoever."
7. Irrespective, therefore, of whether the city in its corporate capacity was a party, and irrespective of the result of the election, the chancellor did not err in refusing the injunction.

Argued February 6, — Decided March 4, 1905.

Petition for injunction.   Before Judge Hammond.   Burke superior court.   November 12, 1904.

The act approved December 15, 1893, provided, that the mayor and six aldermen should constitute a body corporate under the name of the Mayor and Council of Waynesboro, and by that name should be capable of suing and being sued.  Charles W. Skinner, who was a member of said council, and other taxpayers of Waynesboro applied for an injunction, alleging that under the act of July 29, 1904, an election had been held to determine whether the city should make a ten-year contract for electric lights; that the provisions of the act had not been complied with;

that the notice was defective; that the election had been improperly conducted; that two thirds of the number registered had not voted in favor of electric lights; that the city council had unlawfully undertaken to purge the registration list by striking therefrom the names of thirteen persons who, it was alleged, had ceased to be residents, and thereupon resolved that the election resulted in favor of lights, and were threatening to make a ten-year contract for lights without having made provision for the payment therefor. It was also alleged, that the city proposed to grant an exclusive privilege for lighting purposes, and that the lamps and equipment for lighting purposes already owned would be rendered useless and valueless if the electric light contract were made. They prayed that the election and ordinance be declared void, that the mayor and council be enjoined from permitting any one to erect poles and electric wires for any purpose in the street; "that a writ of injunction may issue, restraining the said Mayor and City Council of Waynesboro, their agents, employees, and attorneys from *making any contract whatsoever for electric lights*, with any firm, person, or corporation whomsoever; that process may issue, directed to and requiring Frank M. Cates, mayor, and P. L. Corker, W. H. Davis, George O. Warner, Gray Quinney, and C. W. Skinner, composing the city council of Waynesboro, to be and appear at the next term of Burke superior court, to answer your petitioners' complaint." A restraining order was issued on October 29. The petition was filed October 31. The process attached to the original petition was directed to the defendants in the above-stated case, to wit, the Mayor and City Council of Waynesboro. Frank M. Cates, mayor, and five others composing the city council were required to answer, etc. Service was perfected upon these individuals. The demurrer and answer are in the name of the " defendants," not otherwise indicating that the city is a party.

The defendants contended that under section 4 of the act of 1904, p. 691, the mayor and council had the right to define the basis by which to determine whether two thirds of the qualified voters in the city had voted for electric lights; and that its action in the premises was in conformity to the power thus granted. They also answered, denying that the city was threatening to make the lighting contract complained of, but alleging that

before the filing of the petition, and in pursuance of an ordinance passed on October 29, 1904, the city had made, executed, and delivered a contract for the lighting of the city; and after deny-ing that no provision has been made for the payment of said debt for lights, it alleged that the income of the city is sufficient to pay the same, and that funds are now in hand which can lawfully be used for the current expenses, amply sufficient to meet payments due under the contract. The petition and answer were sworn to, and used as evidence. On the hearing there was some evidence that the contract signed before the notice of the injunction had not been signed by the opposite party. The name of C. W. Skinner was stricken as a party plaintiff, he being a member of the council. After the introduction of evidence, the court refused the injunction. Service of the bill of exceptions was acknowledged by attorneys for the Mayor and Council of Waynesboro.

*Lawson & Scales*, for plaintiffs.
*Brinson & Davis*, for defendant.

LAMAR, J. This was not a proceeding to enjoin payment or performance under a contract already signed; neither was it an effort to restrain the making of an illegal contract only. The prayer was, that the city should be restrained from " making *any* contract whatsoever for electric lights with *any* person whomso-ever." This prayer was based not only on the allegation that a ten-year contract had not been authorized by a popular vote, but that the existing lighting equipment would be rendered valueless, and an increase of taxation result, if the city adopted the electric system. The business affairs of a municipality are committed to the corporate authorities, and it would require a strong case to authorize the courts to interfere with their management. Here nothing was shown to warrant an order restraining the city from making a contract for lighting with electricity, even if the result thereof would be to render valueless the small oil equipment and appliances already owned. Compare Civil Code, § 1859.

The power of a municipality to provide lights for the city is derived from its charter, and not from popular vote; so that if two thirds of the number registered did not vote in favor of mak-ing a ten-year contract, that would not deprive the city of its inherent power to make a contract which did not involve the

creation of a debt.   But if, without the popular vote authorizing the same, it entered into a ten-year contract, the agreement would only be operative so long as neither party renounced or repudiated it.   *City Council of Dawson* v. *Dawson Waterworks Co.,* 106 *Ga.* 696.   The record raises the question as to whether, under *Arnett* v. *Board of Commissioners,* 75 *Ga.* 782 ; *Glaze* v. *Bogle,* 105 *Ga.* 295 (2), the city in its corporate capacity was a party defendant where process was prayed only against the individuals who were for the time being mayor and aldermen. It also presents an issue as to the validity of the election, and as to whether the council had a right to purge the registration list. We are urged to determine this point.   But an interlocutory order is not intended to perform the office of a final decree. Where an injunction has been refused, this court will affirm the judgment of the chancellor if the refusal was proper for any reason.   An injunction is intended to preserve the status, not to undo what has been done.   Neither is it intended to restrain what is not threatened to be done.   If, therefore, as alleged in the defendants' answer, the city had already made a contract, or if, as alleged in the answer, it was not threatening or preparing to make a ten-year contract, there was nothing to enjoin.   The chancellor's refusal to grant an injunction must be

*Affirmed.   All the Justices concur.*