## CHIPSTEAD *et al. v.* OLIVER *et al.*

1. Under the charter of the City of Blakely (Acts of 1900, p. 219, sec. 19), the board of education of that municipality is empowered to select a site for the erection of school buildings, and to contract for their erection. Where the mayor and council and the board of education cooperate through a committee chosen from the respective bodies for the removal of the old buildings on the site selected, a contract by the committee with a contractor for such removal, duly ratified by the board of education, is not so irregular that the payment of the contract price will be enjoined.

2. Where a municipal board is authorized to do a particular act in its discretion, the courts will not control this discretion unless manifestly abused, nor inquire into the propriety, economy, and general wisdom of the undertaking, or into the details of the manner adopted to carry the matter into execution.

JANUARY 22, 1912.

Petition for injunction. Before Judge Worrill. Early superior court. October 11, 1911.

*Glessner & Park,* for plaintiffs.
*Hawes, Pottle & Wright,* for defendants.

Evans, P. J.  The City of Blakely issued $27,000 of bonds for the erection of school buildings; and in the selection of the site for the proposed schoolhouse for the white children there arose a dispute among the citizens of the city, the mayor and council, and the board of education.  The mayor and council, with the consent and approval of the board of education, appointed a building committee of five (three of whom were selected from the council and two from the board of education), with power to select a site and let the contract for the new school building, subject to the approval of council.  Having determined that it was to the best interest of the city to erect the new school building upon the site occupied by the present school buildings, the building committee made a contract with R. J. Self for the removal of the old buildings so as to provide space for the new building.  Certain citizens filed their petition against the mayor and council, protesting against their action, and seeking to enjoin them from paying out any money on this contract, on the ground that the mayor and council had no jurisdiction in the matter of selecting a site or exercising authority in connection with the removal of the old buildings and the erection of any new school building; their contention being that the board of education was vested with exclusive authority over the matter.  A temporary restraining order was granted, and, pending it, the board of education intervened and prayed that all the parties to that suit be enjoined from interfering with the board of education in the construction of the contemplated school building or in the control and management of the school affairs of the city.  A restraining order was granted as prayed in the intervention.  In this condition of affairs the board of education contracted with R. J. Self to finish the removal of the old buildings.  On the interlocutory hearing for injunction, after considering the evidence submitted and the argument of counsel, the court revoked the restraining order and refused an injunction.  The petitioners in the main suit sued out a bill of exceptions complaining of the refusal of the court to grant an injunction as prayed.

1.  The charter of the City of Blakely (Acts 1900, p. 219, section 19) provides for a system of public schools under the control of a board of five members, known as the city board of education.  The board was given the same authority, jurisdiction, and

powers in respect to schools and educational matters of every na-
ture within the school limits as county boards of education had in
their respective jurisdictions. It was further provided that " the
City Council of Blakely shall deed to said board of education the
property on which the Blakely Institute is located, and they shall
hold it for said city for the purposes of the white school." It was
further provided that " the City Council may appropriate money
toward maintaining, furnishing, or repairing school buildings and
property held by said board." In view of these provisions, and es-
pecially that which conferred on the city board the same powers
possessed by county boards, which includes the " power to pur-
chase, lease, or rent school-sites, build, repair, or rent school-
houses, . . and make all arrangements necessary to the ef-
ficient operation of the schools " (Civil Code, § 1484), the board
of education was clothed with authority to select the site and con-
struct the new building. The mayor and council were expressly
authorized to appropriate money toward maintaining and re-
pairing the school buildings. And even if the contract made by
the building committee under the approval of the mayor and coun-
cil and the board of education, for the removal of the old build-
ings, was irregular because of the participation of the mayor and
council, it was none the less binding on the board of education,
which was authorized to make the contract. Nor was the sec-
ond contract between the board of education and the contractor
illegal because they recognized a small damage to the contractor
by reason of the suspension of work because of the injunction, and
agreed to pay the same.

2. The main battle before the judge at the interlocutory hear-
ing concerned the propriety of the selection by the board of educa-
tion of the present site for the erection of the new school build-
ing; and the plaintiffs in error assign error on the refusal of
the court to enjoin the board of education from proceeding fur-
ther with their plan of erecting a new schoolhouse on the present
school site. The complaining citizens contended that the pres-
ent site was unsuitable; this contention was denied by the board
of education and the city council. The evidence to support the
several contentions was conflicting. The board of education was
clearly acting within the scope of its powers; no evidence was ad-
duced to show that they acted fraudulently or corruptly in the se-

lection of the school site. They are a branch of the municipal government, invested with discretion in choosing a location for the school buildings. The judgment of the court implies that they neither acted arbitrarily nor abused their discretion in selecting the site, and the evidence supports this finding. Under such circumstances the rule is, that where a municipal board is authorized to do a particular act in its discretion, the courts will not control this discretion unless manifestly abused, nor inquire into the propriety, economy, and general wisdom of the undertaking, or into the details of the manner adopted to carry the matter into execution. *Danielly* v. *Cabaniss,* 52 *Ga.* 212; *Wells* v. *Atlanta,* 43 *Ga.* 67; *City of Atlanta* v. *Stein,* 111 *Ga.* 791 (36 S. E. 932); *City of Atlanta* v. *Holliday,* 96 *Ga.* 546 (23 S. E. 509); *Dyer* v. *Martin,* 132 *Ga.* 445 (64 S. E. 475).

*Judgment affirmed. All the Justices concur.*