## Morton et al. v. City of Waycross et al.

Atkinson, J. 1. "A court of equity will not interfere with the discretionary action of the governing officers of a city within the sphere of their legally delegated powers, unless such action is arbitrary, and amounts to an abuse of discretion." *Mayor &c. of Gainesville* v. *Dunlap*, 147 *Ga.* 344 (6) (94 S. E. 247) ; *City of Atlanta* v. *Stein*, 111 *Ga.* 789 (36 S. E. 932, 51 L. R. A. 335) ; *South Georgia Power Co.* v. *Baumann*, 169 *Ga.* 649, 652 (151 S. E. 513) ; *Danielly* v. *Cabaniss*, 52 *Ga.* 211 (4) ; *McMaster* v. *Waynesboro*, 122 *Ga.* 231 (5) (50 S. E. 122). If the effect of the proposed contract was not to create a new debt, contrary to the provisions of the constitution of this State, the making of the contract would not be an abuse of discretion by the municipal authorities.

2. In article 1 of the proposed contract the parties stipulated for sale of electric service by the company to the city for and during a period of five years, under terms and conditions specified in the next succeeding fifteen articles and article 22, as fully set forth in the statement of facts. Under proper construction those provisions show an agreement for sale of electric service, which shall be operative so long as neither party repudiates it, and, considered alone, it is not subject to be enjoined on the ground that it was the creation of a new debt by the city without submission to the voters of the municipality. *McMaster* v. *Waynesboro*, supra; *Lott* v. *Waycross*, 84 *Ga.* 681 (11 S. E. 558).

3. In articles 17 to 22, inclusive, the company stipulated to furnish and

install at its expense, for which it should be reimbursed by the city, equipment which the city may select for pumping water by electric power. The cost of the equipment and installation would be approximately $9000, for which the company should be reimbursed by the city, with interest at five per cent. per annum, by the city giving monthly credit on the franchise tax of the company of "fifty per cent. of the saving effected by the operation with electric energy," calculated upon an estimated difference between cost of pumping by steam power and cost of pumping by electric power. Title to the electrical equipment should be retained by the company until it should "be fully reimbursed for its expenditures." The city reserved the right to cancel the contract and cease to purchase power, upon ninety days notice, (a) "by paying in full for equipment and installation, plus interest, . . after deducting all credits," and by refunding "the proportionate cost of connecting the power lines with the pumping station," calculated on the ratio which the time of the contract period remaining after such cancellation "bears to the five-year period, less the salvage value of such property at the time of cancellation," (b) and the further right to cancel "in the event that the cost of operation per thousand gallons with electric energy . . shall during the period of one year exceed" the cost of such operation by steam. If the city exercises the right of cancellation on this ground, it shall have an "option of retaining possession of said electric equipment upon payment of the purchase-price therefor, with five per cent. interest thereon per annum, less any credits made as provided in this contract, or of surrendering said equipment to the company." If it surrenders the equipment "then all credits theretofore made on the purchase-price thereof shall be retained by the company as rental." Under proper construction, the proposed contract contemplates the sale of electric service, and, as necessary to the use thereof by the city, the sale and installation by the company of electrical equipment, the electric service to be paid for monthly as such service shall be rendered during a period of five years, and the price of the equipment and installation, with interest thereon, to be paid monthly by the city giving credit each month on the franchise taxes due by the company of fifty per cent. of the savings by the city accomplished by use of the electric service as compared with the former cost of operation by steam-power. The sale of the equipment and its installation at a time when "the city has not surplus funds with which to pay and has not levied any tax for such purpose" would create a debt by the city, within the meaning of article 7, section 7, paragraph 1, and article 7, section 10, paragraph 1, of the constitution of this State. Civil Code, §§ 6563, 6567.

(a)   The proposed contract differs in several respects from the contracts involved in the cases of *Renfroe* v. *Atlanta*, 140 *Ga.* 81 (78 S. E. 449, 45 L. R. A. (N. S.) 1173) , and *Byars* v. *Griffin*, 168 *Ga.* 41 (147 S. E. 66), but on the point above ruled it is controlled by the principles applied in those cases.

(b)   The fact that the amount was payable at intervals by the city giving monthly credits upon the franchise taxes due by the company, for fifty per cent. of the "savings" by the city, earned by use of the equipment,

300

would not prevent its character as a debt. *Byars* v. *Griffin*, supra; *Tate* v. *Elberton*, 136 *Ga.* 301 (4) (71 S. E. 420).

(c) The case differs from *Mayor &c. of Rome* v. *McWilliams*, 67 *Ga.* 106, in which the city levied a tax to pay the cost of the improvement before making the contract.

4. In section 43 of the charter of the City of Waycross as amended (Ga. Laws 1909, pp. 1456-1492) it is declared: "That all bids for contracts for labor or materials to be furnished said city, or for work to be done in the interest of said city, which shall exceed the sum of five hundred dollars ($500.00) in amount, shall be advertised by the city department in which said work, labor, or materials properly belong, in a daily newspaper published in the City of Waycross once a week for not less than two weeks, and said contract shall be awarded to the lowest and best bidder (unless all bids are rejected) after having been first approved by a majority vote of the city council. Contracts involving five hundred ($500.00) dollars or less shall be made by the mayor and aldermen. This section shall not abridge the power of the city to do all necessary work by its own employees, whenever, in the judgment of the city council, the same can be done more effectively or economically." *Held:*

(a) It is essential to the validity of the proposed contract that the city comply with the foregoing provisions of the charter as to advertisement.

(b) There is no such repugnancy between the foregoing provisions of the charter of the City of Waycross and the subsequent provisions in the amendment to the charter (Ga. L. 1922, pp. 1087, 1100, sec. 23) that "all purchases and sales shall conform to such rules and regulations as the City Commission may from time to time prescribe. In all cases where an amount in excess of one hundred dollars is involved, opportunity for competitive bidding shall be given, after due advertisement thereof in manner to be prescribed by the commission," as will by implication repeal or supersede the above-quoted provisions of .the act of 1909.

5. The judge erred in dismissing the action on general demurrer to the petition as amended. *Judgment reversed. All the Justices concur.*

Russell, C. J., concurs specially in the result.

No. 8050. July 18, 1931. Rehearing denied September 17, 1931.

302

310

*Waller Thomas* and *H. F. Rawls,* for plaintiffs.
*J. D. Blalock* and *Wilson, Bennett & Pedrick,* for defendants.