1. "Individuals do not have the inherent right to conduct their private businesses in the streets of a city. A city can prohibit the owners or operators of taxicabs and buses from transporting passengers for hire in such vehicles upon the streets of the city. The transportation of passengers for hire in such vehicles or otherwise is a privilege which the municipality can grant or withhold. As the owners or operators of taxicabs or jitney-buses have no right to transport passengers for hire on the streets of the city, and as the city can prohibit wholly or partially the conduct of such business in its streets, if the city sees fit to grant permission to individuals to conduct such business in its streets it can prescribe such terms and conditions as it may see fit, and individuals desiring to avail themselves of such permission must comply with such terms and conditions, whether they are reasonable or unreasonable. Schlesinger v. Atlanta, 161 Ga. 148 (129 S.E. 861)." Clem v. LaGrange, 169 Ga. 51 (4) (149 S.E. 638, 65 A.L.R. 1361).
2. "Equity will take no part in the administration of the criminal law. It will neither aid criminal courts in the exercise of their jurisdiction, nor will it restrain or obstruct them." Code, § 55-102. The same rule is likewise applicable in quasi-criminal proceedings. Starnes v. Atlanta, 139 Ga. 531 (77 S.E. 381). The pleaded facts in the instant case are not sufficient to take it from under this rule. Properly construed, the petition shows no more than its dissatisfaction with the grant of favors. "The individual cannot complain of discrimination in the grant of favors." Schlesinger v. Atlanta, supra. *Page 458 
3. "Where a court of equity has not jurisdiction, it will not assume jurisdiction for the purpose of inquiring into the constitutionality of a legislative act or the validity of a municipal ordinance." City of Atlanta v. Universal Film Exchanges, 201 Ga. 463 (2) (39 S.E.2d 882).
Judgment affirmed. All the Justices concur, except Wyatt, J., who took no part in the consideration or decision of this case.
 No. 16135. MARCH 19, 1948.
On April 9, 1947, the Mayor and General Council of the City of Atlanta adopted an ordinance governing taxicabs. Section two of the ordinance provides: "Any company desiring to engage in the business of operating taxicabs shall first make application to the Mayor and General Council for a permit to operate such vehicles on the highways of the City of Atlanta. Said application shall be in writing, addressed to the Mayor and General Council, and shall be filed with the Clerk of Council. It shall contain the full name and address of the applicant; and if the applicant is a corporation, the name of its officers. It shall state the location from which the business shall be operated, the type of equipment to be used, the maximum number of passengers each vehicle is manufactured to carry, the number of vehicles to be operated and any other information requested by the General Council." Section 21 of the ordinance provides: "For the purpose of preserving peace, good order, and properly rendering taxicab service to the people of Atlanta, the Mayor and General Council of the City of Atlanta is hereby authorized and empowered to establish by ordinance call box stands upon the streets of Atlanta in such places as in its discretion will be proper. A company desiring to establish a call box stand shall make written application to the Mayor and General Council for such stand. The applicant must attach to the application the written approval of the abutting property owners of the space, consenting to the creating of such stand, and shall also have installed at such stand a telephone, or call box, connected with such company's central switchboard. Upon filing of the application, the Police Department shall make an investigation of the traffic conditions at said place, and shall thereafter file their written recommendation to the Mayor and General Council. *Page 459 
The Mayor and General Council shall then either grant or refuse the application. When a call box stand has been established as herein provided, it shall be used solely by the company to whom the same was granted and no other company shall be permitted to use the same. Provided, however, that no company shall obtain permits for more than four such closed stands." Section 22 of the ordinance provides: "Companies operating call box stands as provided for in this ordinance shall be allowed to have on duty at such stand, a starter or other employee, for the purpose of assisting in the loading or unloading of passengers from their cabs, for receiving calls and dispatching cabs, for soliciting passengers for his company at such stand. The words, `at such stand,' shall mean that part of the sidewalk immediately adjacent to and of equal length with such call box stand. It shall be unlawful for any such starter or other employee to go beyond the area herein designated for the purpose of soliciting passengers or assisting them in boarding such cabs." Effective May 10, 1947, the Mayor and General Council by ordinance established and awarded to Yellow Cab Company for its exclusive use closed stands at the following locations: Piedmont Hotel, Ansley Hotel, Henry Grady Hotel, and Biltmore Hotel; to Associated Cab Company Inc. the following exclusive closed stands: Robert Fulton Hotel, Atlantan Hotel, Winecoff Hotel, and the Georgian Terrace Hotel; and to Atlanta Veterans Transportation Inc. the following exclusive closed stands: Briarcliff Hotel, Imperial Hotel, Clermont Hotel, and Brookwood Station.
On July 10, 1947, the plaintiff filed its equitable petition against Herbert T. Jenkins, Chief of Police of the City of Atlanta, to enjoin the enforcement of those provisions of the ordinance relating to call box stands. In substance, after being several times amended, the petition makes these allegations: The Mayor and General Council of the City of Atlanta granted it a permit to operate its taxicabs on the public streets of the city, and to do and perform all of the acts and things necessary to furnish to the public the character of transportation commonly furnished by taxicab operators. Upon the faith of its permit, the plaintiff has expended large sums of money in the purchase *Page 460 
of automobiles and a station for its business. The Mayor and General Council have granted to two competing companies identical permits to engage in the taxicab business. In order for the plaintiff to operate its business profitably, it must have access to locations where people who desire taxicab accommodations congregate. The Mayor and General Council have awarded to the plaintiff's competitors the open stands in that section of the city where the larger number of people who use taxicabs congregate, and have in that action unfairly discriminated against it. On several different occasions the defendant and his subordinate police officers have arrested the drivers of the plaintiff's taxicabs and charged them with the offense of using the closed stands of its competitors in violation of the penal provisions of the ordinance. Those cases, some of which were made months ago, are still pending in the police court, and other cases are being made which the plaintiff has been forced to answer and defend, but no determination has been made in any of the cases, making it impossible for it to get the question of the validity of the ordinance determined in the law courts, and for that reason it is compelled to resort to a court of equity.
It was further alleged that each section of the ordinance providing for closed stands and fixing a penalty for violating the regulations governing them is in violation of various alleged provisions of the Georgia Constitution. The prayers were: that the defendant be restrained and enjoined from molesting the plaintiff and its taxicab drivers, its starters, employees, or any of them, in the use of any of the open stands which had been designated and assigned to its competitors by the Mayor and General Council of the City of Atlanta; that the defendant and the police officers under his control be restrained and enjoined from interfering with its starters while lawfully in the discharge of their duties at any of the open stands which had thus been established; and that each and every section of the ordinance purporting to give the Mayor and General Council authority to establish open taxicab stands for the exclusive use of any company be declared unconstitutional, and therefore void and unenforceable by the defendant.
A general demurrer, which attacked the petition as amended *Page 461 
for failing to state a cause of action, was sustained, and the exception here is to that judgment.