32050. AWTRY AND LOWNDES COMPANY *v.* CITY OF ATLANTA.

DECIDED DECEMBER 2, 1948. REHEARING DENIED DECEMBER 16, 1948.

*William A. Fuller, George G. Finch,* for plaintiff.

*J. C. Savage, J. C. Murphy, J. M. B. Bloodworth, J. E. Feagin,* for defendant.

MacIntyre, P. J.   The questions  presented by the record for our consideration are in substance two: (1) Did the construction and application placed by the board of zoning appeals upon the sections of the zoning ordinance of Atlanta, set out in the statement of facts, render such sections unreasonable and arbitrary under the facts of this case; and (2) if not, was there an abuse of discretion in denying Awtry & Lowndes a permit under the evidence here presented?   In passing upon the first question presented, the superior court construed the sections of the ordinance in issue as follows:   "The ordinance which empowers the board to grant a *variance* is entirely permissive and empowers the board to vary a use from one class to another, provided in the judgment of the board such use will 'substantially serve the public convenience and welfare and will not substantially and permanently injure the appropriate use of the neighboring property'"; and in answer to the second question, the superior court held that the court was not authorized on certiorari to pass upon the conflicting questions of fact presented by the evidence and the writ of certiorari was overruled. (Italics ours.)   With the answer

to the first question we can not agree, as we shall endeavor to point out hereafter; and we think that the construction and application placed upon the sections of the ordinance here in question rendered the same unreasonable and arbitrary under the facts presented by the record.

It is well settled that the constitutional amendments of 1928 and 1945 (Ga. L. 1927, p. 129, ratified Nov. 6, 1928; Ga. L. 1945, p. 8, ratified August 7, 1945) altered the previously existing limitations upon the authority of municipalities to pass zoning and planning ordinances, and that such ordinances are now valid and enforceable. *Howden* v. *Savannah*, 172 *Ga.* 833 (159 S. E. 401). The modified principle, as it now exists in the law following such amendments, was well stated in *Schofield* v. *Bishop*, 192 *Ga.* 732, 738 (16 S. E. 2d, 714), as follows: "The law throws many protections around the ownership of property. This protection is written into the fundamental law both State and Federal; but when it comes to the growing needs, particularly in populous areas, for public regulation and restriction, we find we do not own our property as absolutely as is sometimes thought. There are many times misfortunes attached to the ownership of it. It declines in value because of shifting centers of business or of residents, or increases sometimes due to important developments. These are matters that can not always be controlled; and when a public body is granted or enjoys the power for the public benefit to put restraint on the use of the property in populous areas, the inquiry then is merely a matter of whether they had sufficient cause for the public good to make such restrictions. We know that ordinarily they should be in a better position to understand the needs of their own communities; and where they once are given the power, courts will not interfere with the exercise of it unless it appears that the rights of a citizen have been violated. It is not the business of the courts to regulate these governing bodies as to matters within their discretion."

"It need hardly be said that courts and not administrative boards are vested with power to determine all judicial matters, including those relating to rights of property touching zoning, but they are not inclined to interfere with the discretion of the board in the absence of evidence of arbitrary action or abuse of

discretion." 3 McQuillin on Municipal Corporations (2d ed., 1943 revision), 519, § 1050. Unless the regulations are so utterly unreasonable and extravagant that the property and personal rights of citizens are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not exceed the limits of the powers delegated to the municipality by the Constitution and the legislature to pass zoning regulations. See *Clein* v. *Atlanta*, 164 *Ga.* 529, 535 (139 S. E. 46, 53 A. L. R. 933); *Chipstead* v. *Oliver*, 137 *Ga.* 483 (2) (73 S. E. 576); *Hallman* v. *Atlanta Child's Home*, 161 *Ga.* 247 (6) (130 S. E. 814). However, the zoning law is not to be so interpreted and applied as to render the statute and ordinance unreasonable and arbitrary; and if it is so interpreted and applied, such would be an abuse of discretion of which this court will take cognizance. *Fauss* v. *McConnell*, 172 *Ga.* 444 (1) (157 S. E. 625).

"The right to work and make a living is one of the highest rights possessed by any citizen. It may be abridged to the extent, and only to the extent, that is necessary reasonably to insure the public peace, safety, health, and like words of the police power." *Richardson* v. *Coker*, 188 *Ga.* 170, 175 (3 S. E. 2d, 636. " 'The regulation of a lawful business, however, is dependent upon some reasonable necessity for the protection of the public health, safety, morality, or other phase of the general welfare; and unless an act restricting the ordinary occupations of life can be said to bear some reasonable relation to one or more of these general objects of the police power, it is repugnant to constitutional guaranties and void.' *Bramley* v. *State*, 187 *Ga.* 826, 835 (2 S. E. 2d, 647)." *DeBerry* v. *LaGrange*, 62 *Ga. App.* 75, 79 (8 S. E. 2d, 146). See also *Cosgrove* v. *Augusta*, 103 *Ga.* 835, 836 (31 S. E. 445, 42 L. R. A. 711, 68 Am. St. R. 149).

The governing body of the City of Atlanta possesses the power to zone and restrict the use of property, and the ordinances and acts of such governing body in the exercise of this power will not be disturbed by the court, unless they are unconstitutional or are clearly arbitrary and unreasonable. The municipality, however, does not have, as an incident to its power to

regulate, the power to prohibit altogether a lawful business conducted in a lawful manner; and it cannot declare such a lawful business to be a nuisance per se. *Jones* v. *Atlanta,* 51 *Ga. App.* 218 (179 S. E. 922). It has only the power to prescribe the zone in which a lawful business, conducted in a lawful manner, may be carried on.

That the business of undertaking is one of unusual characteristics has been recognized in numerous instances; but it has with equal consistency been held that such a business is not a nuisance per se. *Morrison* v. *Slappey,* 153 *Ga.* 724 (113 S. E. 82); *Harris* v. *Sutton,* 168 *Ga.* 565 (148 S. E. 403); *McGowan* v. *May,* 186 *Ga.* 79 (196 S. E. 705). And see *Blackman Health Resort* v. *Atlanta,* 151 *Ga.* 507, 511 (107 S. E. 525, 17 A. L. R. 516), where it is recognized that the municipality can by appropriate regulation prevent a nuisance from arising. The governing authorities of Atlanta were, therefore, justified in including undertaking establishments in a special category—Class U-7— when classifying and zoning the City of Atlanta for the public health, welfare, safety, and convenience. In the exercise of the authority given them (Ga. L. 1929, p. 818, City Code of Atlanta, § 15-205), they have delegated to the Board of Zoning Appeals the authority to permit the location of a mortuary in any zone where, in the judgment and discretion of the board, such use will "substantially serve the public convenience and welfare, and will not substantially and permanently injure the appropriate use of the neighboring property." City Code of Atlanta, § 93-210. But, under the zoning ordinance, undertaking establishments, as well as the other business and non-business uses classified under U-7, cannot be located anywhere in the City of Atlanta without a special permit, and no zone is provided wherein an undertaking establishment may locate and carry on its business as a matter of right.

The tests imposed by the ordinance upon the Board of Zoning Appeals in the exercise of its discretion in the present instance—the granting of a special permit to a mortuary to locate its business anywhere in the city—are two: (1) provided the use will "substantially serve the public convenience and welfare," and (2) provided the use "will not substantially and

permanently injure the appropriate use of the neighboring property." *All* the evidence introduced at the hearing leads inescapably to the conclusion that the removal of Awtry & Lowndes' establishment from its present location on Cain Street to the Standard Club premises on Ponce de Leon Avenue will "substantially serve the public convenience and welfare." It is apparent then that the Board of Zoning Appeals reached its determination and denied the permit to Awtry & Lowndes because it found that the use of the Standard Club property as a funeral home would "substantially and permanently injure the appropriate use" of the property of the Shrine for their Temple, for it appears from the record that other neighboring property owners were unanimously in favor of the granting of the permit, and only the Shrine objected. There was no evidence introduced which tended in any manner whatsoever to show that the undertaking establishment of Awtry & Lowndes was not conducted in a lawful and inoffensive manner, nor any evidence to show that the use of the Standard Club property as a mortuary would result in a depreciation of the neighboring property for the purposes for which it had been designated in the interest of the public safety, health, convenience, and welfare — that is, for business uses. This presents the question which, as we have previously pointed out, we deem to be controlling of the issue here before the court: Under these facts and circumstances, was the refusal of the Board of Zoning Appeals to issue to Awtry & Lowndes a permit an unreasonable and arbitrary interpretation and application of the sections of the zoning ordinance here in issue?

The constitutionality of the sections of the ordinance here involved is not attacked, nor is it now open to attack in this court, because the Supreme Court of Georgia by a full bench decided in *McCord* v. *Ed Bond & Condon Co.*, 175 *Ga.* 667 (165 S. E. 590, 86 A. L. R. 703), that the sections were constitutional and were a valid delegation of authority to the Board of Zoning Appeals. It was also decided that the ordinance, as there applied in granting to a mortuary a permit to operate its business in a residential area, was not unreasonable and arbitrary, because it was recognized that the mortuary was

not a nuisance per se, and it was a question of fact for the determination of the Board of Zoning Appeals whether or not it would be a nuisance in the contemplated location.

Under the facts of that case, it was determined that the grant of the permit by the board was in effect to permit a "variance" in the exercise of its discretion under the appropriate tests set up for such exercise of discretion, and the court held that the board had not abused its power. There the board awarded a "variance" to conduct a business (an undertaking business), which is of a lower classification, in a residential district, which is of a higher classification, designated for residential purposes by the appropriate municipal authorities under their authority to zone for the public safety, health, convenience, and welfare. But in this case the undertaking establishment is seeking to obtain a permit to remove its business to a location which has been zoned for business purposes by the appropriate municipal authorities under their authority to zone for the public safety, health, convenience, and welfare. The right to work and make a living by exercising a lawful business in a lawful manner is "fundamental, natural, inherent, and is one of the most sacred and valuable rights of a citizen" (*DeBerry* v. *LaGrange*, supra, p. 78); and it may be abridged to the extent, and only to the extent, that is necessary reasonably to insure the public peace, safety, health, and like words of the police power. Where then can this right to operate such business in a lawful manner be exercised if it may not be exercised in a zone which, in the interest of public safety, health, convenience, and welfare, has been designated for business, when it is established that such location will substantially serve the public convenience and welfare?

" 'Everyone has the right to use his property as he sees fit, provided that in so doing he does not invade the rights of others unreasonably, judged by the ordinary standards of life and according to the notions of reasonable men. The right to use one's property as he pleases implies a like right in every other person; and it is qualified by the doctrine that the use in the first instance must be a reasonable one. The maxim is sic utere tuo ut alienum non laedas. . . That the business itself

is offensive to others, or that property in the neighborhood of such business is necessarily adversely affected thereby, or that persons of fastidious taste would prefer its removal, is not sufficient.'" *Blackman Health Resort* v. *Atlanta*, supra, p. 514. This right so to use one's property is of course subject to the power of municipalities to pass and enforce zoning and planning laws for the public safety, health, convenience, and welfare.

"Courts interpret the term 'public welfare' with some strictness. It does not include mere expediency, whim, caprice, sentimental objects, or purely aesthetic purposes, nor usually mere convenience. So far as the courts have given utterances expressive of their attitude on these matters it is an open question to what extent 'public welfare,' apart from a recognized basis justifying the exercise of the police power, would embrace the character of the district, its peculiar suitability for particular uses, the conservation of property values and the direction of building development. But in any event it is, nevertheless, true that there must be an essential *public* need for the exercise of the police power to justify its use. . . In recent times there is a disposition greater than ever before to use the police power to secure objects strongly *desired* by the public or an aggressive minority thereof. This attitude of mind restricts personal liberty and property rights and assumes that a public *desire*, when strong and persistent is the equivalent of a real, vital and compelling public *need*. There is great danger involved in overlooking the constitutional guaranties and neglecting to give them full force and effect as designed." (Italics ours.) 3 McQuillin, supra, 504, § 1048.

The meaning and effect of the words, "substantially and permanently injure the appropriate use of the neighboring property," in the second test which is imposed upon the exercise of the discretion of the board in granting a permit to an undertaking establishment, must thus be construed to mean the "appropriate use of the neighboring property as established by the proper municipal authorities in the exercise of their power to zone for the *public* welfare," etc. It cannot validly be construed to mean "the appropriate use to which an individual neighboring owner puts, or intends to put, his property."

It seems to us that, if the ordinance, as was the apparent interpretation of the board under the record here, seeks to authorize the board in its discretion to refuse to permit the exercise of such lawful business in an area zoned for business of a like or similar nature, unless it appears that it will substantially and permanently injure the appropriate use for which the neighboring property is zoned, and thus to discriminate between this and other businesses without public need, it would be such an unreasonable and arbitrary application of the police power as would render these sections of the ordinance invalid, since this business is permitted to be located somewhere in the city, but no zone is designated in which it may be conducted as a matter of right. The ordinance guarantees to the owners of other lawful businesses a permit to exercise their right to conduct their calling in the appropriate zone. So far as the ordinance requires them to restrict their activities to the appropriate zone and to obtain a special permit to locate in any other than the designated zone, and so far as it requires another business, which is recognized to be of unusual characteristics to locate only where it will substantially serve the public convenience and welfare and where it will not substantially and permanently injure the appropriate use for which the neighboring property is zoned, it is a valid exercise of the police power for the public safety, health, welfare, and convenience. But when it is so interpreted and applied as to permit the refusal to another business—though recognized to be of exceptional characteristics—the like exercise of its right in a district zoned for business, when it is uncontested that such location will substantially serve the public convenience and welfare, when it is not shown that it would substantially and permanently injure the appropriate use for which the property has been designated in the interest of the public safety, health, welfare, and convenience, and when the only objection is that it will injure the use of one tract of neighboring property for a purpose which is itself a non-business use, the sections of the ordinance here in issue (when so interpreted and applied under these facts here appearing) become unreasonable, arbitrary, and discriminatory.

The Shrine purchased their property in a business zone, presumably knowing that it was a business zone and knowing that

a business, as a matter of right, could locate next to their property. It must be held to know that every owner of property has the right to use his property reasonably *in the appropriate zone;* for to refuse such right when such use is not a nuisance, not in the exercise of the power of regulation for the public safety, health, welfare, and convenience, but at the instance of a single adjoining property owner, is manifestly unreasonable and arbitrary. The undertaking business is lawful, and, since no zone is designated for it, it must be held to have an equal right with other business to locate in an area appropriately zoned, where it is uncontradicted that such location will substantially serve the public convenience and welfare, and where it is not shown that it would substantially and permanently injure the appropriate use for which the property has been designated by the zoning officials.

We therefore think that the action of the Board of Zoning Appeals in construing and applying the sections of the ordinance here involved, so as to authorize themselves under the facts presented .in the record of this case to refuse Awtry & Lowndes a permit to operate their business in a zone devoted to business uses, was unreasonable, arbitrary, and discriminatory; and we hold that the judgment of the superior court, overruling the writ of certiorari, was erroneous.

*Judgment reversed. Gardner and Townsend, JJ., concur.*