21703, 21704. MACON AMBULANCE SERVICE, INC. et al. v. SNOW PROPERTIES, INC. et al.; and vice versa.

Argued June 12, 1962—Decided September 10, 1962.

*Jones, Sparks, Benton & Cork, Frank C. Jones, Buckner F. Melton,* for plaintiffs in error (Case No. 21703).

*Martin, Snow, Grant & Napier, Harris, Russell & Watkins,* contra.

*Martin, Snow, Grant & Napier,* for plaintiffs in error (Case No. 21704).

*Jones, Sparks, Benton & Cork, Frank C. Jones, Buckner F. Melton, Harris, Russell & Watkins,* contra.

ALMAND, Justice. The main bill of exceptions assigns error upon the rulings on the general and special demurrers of the defendants, Macon Ambulance Service, Inc. et al. and the City of Macon, and the sustaining of certain special demurrers of the plaintiffs, Snow Properties, Inc., et al., to the answer of the defendants and to the grant of a permanent injunction.

The cross-bill of exceptions assigns error on the order sustaining certain special demurrers of the defendants to the plaintiffs' petition.

The entire case in both bills of exceptions centers on the validity of (a) an ordinance enacted by the Mayor & Council of the City of Macon granting an exclusive five-year franchise to the Macon Ambulance Service, Inc. to transport by ambulance sick and injured persons within the City of Macon; (b) the validity or invalidity of a proposed five-year contract between the Macon Hospital Commission and the Macon Ambulance Service, Inc. under which the Hospital Commission would pay to the ambulance company $11,600 annually for the transportation of charity patients to and from the Macon Hospital and (c) also for consideration is whether the court erred in striking several paragraphs of the answer of the Macon Ambulance Service, Inc. which set up as a defense the prior method over a period of years of the Hospital Commission in granting exclusive contracts for ambulance service to and from the Macon Hospital and that Snow Properties, Inc. by its participation in such contracts and its attempt to get a new contract was estopped to question the validity of the franchise or proposed contract.

The trial court ruled that (a) the parts of the stricken answer were immaterial and irrelevant; (b) the City of Macon did not have charter power to grant an exclusive contract to the Macon Ambulance Service, Inc. to provide ambulance service in the City of Macon and (c) the proposed five-year contract by the Hospital Commission with the Macon Ambulance Service, Inc. violated the debt limitation clause of the Constitution of Geor-

gia (Art. VII, Sec. VII, Par. I; *Code* § 2-6001) which prohibits a municipality from incurring any new debt except for a temporary loan without the assent of a majority of the qualified voters in an election held for that purpose. The Mayor & Council of the City of Macon were permanently enjoined from enforcing the franchise ordinance to the extent that it purports to grant an exclusive franchise to the Macon Ambulance Service, Inc., and the Hospital Commission and the Macon Ambulance Service, Inc. were permanently enjoined from entering into the five-year contract. The order further provides that the Hospital Commission may in its discretion enter into a contract for the furnishing of ambulance service to the Macon Hospital provided the contract did not exceed one year.

■ *The rulings on the demurrers of the plaintiffs to the answers of the defendants.* In the main the defendants sought to estop the plaintiffs from maintaining this action because they acquiesced in the Macon Ambulance Service, Inc. having an exclusive contract with the Hospital Commission for ten years and also because Snow Properties, Inc. had made a bid to obtain a contract for ambulance service from the Hospital Commission.

This was a suit by the plaintiffs in their capacity as citizens and taxpayers. As such, unless the plaintiffs by some intended deception, by conduct or declarations or such gross negligence as to amount to constructive fraud, by which the defendants were misled to their injury, would not be estopped to challenge the validity of the franchise or the proposed contract. *Code* § 38-116. Estoppel cannot legalize or vitalize that which the law declares unlawful and void. *Northington v. Candler,* 211 Ga. 410 (2) (86 SE2d 325). "Engaging in such a business and having such work done are manifestly acts which are ultra vires; and while a person carrying on a similar business can not, on the ground that the same has been injured or destroyed by competition on the part of the city, maintain a petition for equitable relief, any citizen and taxpayer may, as such, obtain an injunction restraining the municipal authorities from doing such acts." *Keen v. Mayor &c. of Waycross,* 101 Ga. 588 (3) (29 SE 42). It was not error to strike the several paragraphs of the defendant's answer seeking to set up the defense of estoppel. In

support of this ruling see: *Coker v. Atlanta, Knoxville &c. R. Co.*, 123 Ga. 483 (6) (51 SE 481); *Employing Printers Club v. Doctor Blosser Co.*, 122 Ga. 509 (2) (50 SE 353, 69 LRA 90, 106 ASR 137, 2 AC 694); and *Gay v. Laurens County*, 213 Ga. 518 (2) (100 SE2d 271).

■ *The exclusive five-year contract to provide ambulance service in the City of Macon.* By ordinance the Mayor & Council of the City of Macon granted to Macon Ambulance Service, Inc. and its successors and assigns the exclusive right, power and privilege for a period of five years "to own, operate and maintain within the limits of the City of Macon an ambulance service for hire utilizing the streets of the City of Macon for the transportation of such persons who are ill, wounded or otherwise require the use of ambulance for transportation." The trial court held that the City of Macon was without charter power to grant an exclusive franchise to the Macon Ambulance Service, Inc. The defendants contend that the city did have such power, citing provisions of the city charter authorizing it by ordinance to make and establish "rules and regulations respecting public streets . . . motor vehicles . . . respecting all other matters and things affecting the good government of said city as they shall deem requisite and proper for the security, welfare, health and convenience of said city and for the preservation of the peace and good order of the same" and further the charter power "to regulate and control . . . motor buses and other common carriers for hire [and] motor vehicles."

A franchise is a contract creating property rights. *City of Summerville v. Georgia Power Co.*, 205 Ga. 843 (1) (55 SE2d 540); *Atlantic C. L. R. Co. v. Southern R. Co.*, 214 Ga. 178 (2) (104 SE2d 77). "The prevailing rule is that unless the power is expressly conferred by the legislature, a municipal corporation can not grant to any person, firm or corporation an exclusive privilege or monopoly." 10 McQuillin on Municipal Corporations § 29.93. "Thus, statutory authority to grant the use of the streets for such time . . ." and on such terms as they deem proper "does not authorize the granting of an exclusive franchise." McQuillin, op. cit., vol. 12, § 34.23. "Within constitutional limitations the state, or the municipal corporation acting

under authority from the state, may grant exclusive franchises to use streets, but, in the absence of statutory, constitutional, or charter authorization the general power of a municipality to grant the use of its streets does not include the power to grant exclusive franchises or privileges. In order to infer such a power from other powers, it is not enough that the authority be convenient to them, but it must be indispensable. . . A municipality lacking power to grant exclusive privileges cannot grant an exclusive right in its streets in the sense that every other company is excluded to whom similar rights might be granted, or that the municipality itself is precluded from competing with the grantee." 64 CJS 141, 142, Municipal Corporations, § 1724.

In *City of Atlanta v. Stein,* 111 Ga. 789 (36 SE 932, 51 LRA 335) it was held, "A municipal corporation, though not required by its charter to let contracts for public work to the lowest bidders, and though clothed as to such matters with the broadest discretionary powers, has no authority to adopt an ordinance prescribing that all work of a designated kind shall be given exclusively to persons of a specified class. Such an ordinance is ultra vires and illegal, because it tends to encourage monopoly and defeat competition, and all contracts made in pursuance thereof are void." In *City of Waycross v. Caulley,* 163 Ga. 372 (1) (136 SE 139) this court held, "The ordinance purports to grant an exclusive franchise to the individuals mentioned as grantees, which would deny a skilled butcher having an established business the right to slaughter at the abattoir or elsewhere his own animals for food to be used in the city. To the extent that the ordinance denies such right it creates a monopoly." Though the operation of vehicles for hire on the city streets is a privilege rather than a right, with the privilege being withheld or bestowed as the governing authorities of the municipality see fit to reasonably regulate their use under the police power for the welfare and protection of the general public, in granting exclusive franchises the exercise of such power must be found in the powers granted in the charter. The power to prohibit *any* ambulance for hire from using the streets of Macon does not carry with it the power to grant an exclusive right to one party engaged in a private business to so use its streets for such

purpose. None of the cases (*Schlesinger v. City of Atlanta*, 161 Ga. 148, 129 SE 861; *Clem v. City of LaGrange*, 169 Ga. 51, 149 SE 638, 65 ALR 1361; *Atlanta Veterans Transportation, Inc. v. Jenkins*, 203 Ga. 457, 47 SE2d 324; and *City of Marietta v. Howard*, 208 Ga. 719, 69 SE2d 246) relied upon by the defendants involved the grant of an exclusive franchise for the operation of motor vehicles for hire on the streets of municipalities but dealt with the power of the city to regulate those licensed in operating vehicles for hire on the streets of the city. In *Associated Cab Co. v. City of Atlanta*, 204 Ga. 591 (50 SE2d 601) the plaintiff, a holder of a license to operate taxicabs over the streets of the City of Atlanta sought to enjoin the city from granting an exclusive franchise to another motor transportation company to transport persons *from* the Atlanta Municipal Airport on the ground that it violated the paragraph of the Constitution forbidding the creation of monopolies. This court in affirming the denial of an injunction pointed out that the plaintiff had a license to operate taxicabs in the streets of Atlanta, but it did not allege that the airport was within the City of Atlanta or that its license included the privilege of operating its taxicabs on the municipally owned airport property. It might also be added that the city was dealing with the operation of its property held by it in its governmental capacity and not the operation of vehicles for hire in the streets of the city.

The defendants contend that the city in the franchise ordinance resolved that the ownership and operation of an ambulance service is "affected with the public interest" and from the standpoint of health, welfare and safety an exclusive franchise could be granted. Similar contentions were made and rejected in Checker Cab Co. v. City of Johnson City, 187 Tenn. 622 (216 SW2d 335), and North Little Rock Trans. Co. v. City of North Little Rock, 207 Ark. 976 (184 SW2d 52, 159 ALR 813). In both of these cases a municipality had granted *exclusive franchises* to taxicab companies. In the Tennessee case it was held that a monopoly cannot be validly created by connecting such creation with the exercise of the police power nor does the power of a municipality to license or regulate a useful trade carry with it the implied authority to create a monopoly therein. In the Arkansas

case it was held that though the anti-monopoly section of the constitution must be read and considered along with the state's police power, a statute violating the anti-monopoly section should not be suffered to stand where the absence of a proper exercise is clearly shown. See Co-Op Cab Co. v. Settle, 171 F2d 40 (5th Cir.), which held void an ordinance purporting to grant an exclusive franchise for the operation of taxicabs in the City of Athens, Georgia.

The trial court did not err in overruling the demurrers to the petition and enjoining the defendant city from enforcing the franchise ordinance to the extent that it purports to grant an exclusive franchise to the Macon Ambulance Service, Inc.

■ *The right of the Macon Hospital Commission to enter into a five-year contract with Macon Ambulance Service, Inc. to furnish ambulance service to and from the Macon Hospital.* The record discloses that the Macon Hospital Commission was created by an amendment to the charter of the City of Macon. Under the charter the central management and maintenance of the Macon Hospital was vested exclusively in the commission. The hospital is owned by the City of Macon, but Bibb County as well as the city appropriates annually moneys derived from the levy of taxes to care for charity patients in the hospital. Under the proposed contract the Hospital Commission would pay to Macon Ambulance Service, Inc. $7,200 per year and would further pay as agent for the County of Bibb $2,200 per year and as agent for the City of Macon $2,200 per year for the transportation of charity patients in the City of Macon, payable in monthly instalments. Said contract is to extend for a period of five years, with no right in the commission to terminate same unless the ambulance service should become inferior or inadequate.

The plaintiffs assert that such a contract would be null and void because it would be in violation of Art. VII, Sec. VII, Par. I of the State Constitution (*Code* § 2-6001) which provides: "The debt hereafter incurred by any county, municipal corporation or political division of this State except as in this Constitution provided for, shall never exceed seven per centum of the assessed value of all the taxable property therein, and no such county, municipality or division shall incur any new debt except

for a temporary loan or loans . . . without the assent of a majority of the qualified voters of the county, municipality or other political subdivision voting in an election for that purpose to be held as prescribed by law."

The Macon Hospital Commission was created by an amendment to the Charter of the City of Macon (Ga. L. 1960, pp. 2337, 2344). Under this amendment the Commission was authorized and empowered "to make and enforce all contracts necessary for the maintenance, control, regulation, and management of said hospital and make such contracts calling for special or extraordinary expenditures as may be necessary." The expenses for the operation of the hospital would be paid from its earnings, gifts and funds appropriated by the City of Macon, Bibb County and the Water Board. The act creating the Hospital Commission does not expressly impose any duty upon the city or county to appropriate funds to pay for the contractual obligations of the Hospital Commission.

The Hospital Commission in its notice calling for bids for furnishing ambulance service to the hospital stated that the contract shall provide for furnishing adequate equipment acceptable to the Administrator of the Macon Hospital and that the contract could be canceled by the Hospital Commission upon failure of the ambulance service contractee to comply with any of the provisions contained in the contract. Under the proposed contract the Hospital Commission would pay the sum of $11,600 per year for the transportation of charity patients in the City of Macon in monthly installments and in addition would pay $.40 (forty cents) per mile for each out of town trip made for charity patients.

It thus appears that the Hospital Commission was seeking to provide adequate service in the hospitalization of charity patients to and from the Macon Hospital by the making of the proposed contract. Under the charter of the City of Macon the Hospital Commission has the authority to make all contracts necessary for the maintenance of the Macon Hospital. The primary function of the hospital is to provide medical service to charity or indigent patients. That service is not confined to providing doctors, nurses and physical facilities but includes the

service of transporting the sick charity patients to and from the hospital. It is common knowledge that public charity hospitals in this state maintain ambulance service for sick and injured persons. In the operation of a hospital it is necessary to employ doctors, interns, nurses and other employees for its efficient operation and where the hospital contracts with a third party to render ambulance service to charity patients, conditioned upon such party rendering such service in a manner satisfactory to the administrator of the hospital, we cannot say that such a contract constitutes the incurring of a debt within the meaning of the debt limitation provision of the Constitution, even if the contract calls for the rendering of ambulance service beyond the year in which the contract is made.

It is our opinion that the proposed contract does not create a debt prohibited by our Constitution, and such cases as *City Council of Dawson v. Dawson Waterworks Co.*, 106 Ga. 696 (32 SE 907); *Renfroe v. City of Atlanta*, 140 Ga. 81 (78 SE 449, 45 LRA (NS) 1173); *Byars v. City of Griffin*, 168 Ga. 41 (147 SE 66); *Dortch v. Southeastern Fair Assn.*, 182 Ga. 633 (186 SE 685); and *City of Warm Springs v. Bulloch*, 212 Ga. 149 (91 SE2d 13), relied upon by the plaintiffs, have no application in the instant case. For cases that support our conclusion see: *McMaster v. Mayor &c. of Waynesboro*, 122 Ga. 231 (50 SE 122), and *Morton v. City of Waycross*, 173 Ga. 298 (160 SE 330).

The trial court erred in holding that the proposed five-year contract for ambulance service violated Art. VII, Sec. VII, Par. I (*Code* § 2-6001) of the State Constitution and in enjoining the Macon Hospital Commission from entering into the proposed contract.

■ The cross-bill of exceptions complains of the rulings of the trial court sustaining certain special demurrers of the defendants to enumerated paragraphs of the petition of the plaintiffs. These paragraphs stricken were as to (a) the invalidity of the exclusive franchise and (b) the invalidity of the proposed five-year contract between the Macon Hospital Commission and Macon Ambulance Service, Inc. Since we have above held the franchise ordinance to be invalid, we will consider only the rulings on the demurrers to the allegations relating to the proposed contract for ambulance service.

Paragraph 10 of the petition, which was stricken, alleged that the refusal by the Mayor and Council to grant a franchise to Memorial Chapel forced the Hospital Commission to a conclusion that it had no alternative other than to enter into a contract with the Macon Ambulance Service, Inc. and thus prevented it from exercising its own discretion. Plaintiffs' second amendment to the petition, most of which was stricken on demurrer, alleged that the awarding of a contract to Macon Ambulance Service, Inc. by the Hospital Commission in view of their findings and conclusions constituted a palpable abuse of discretion on their part.

A board of a municipality empowered to perform a particular act in its discretion will not be interfered with or controlled by the courts in its discretionary acts unless its discretion is manifestly abused, nor will the court inquire into the propriety, economy or wisdom of the undertaking or into the details of the manner adopted to carry the matter into execution. See *Chipstead v. Oliver,* 137 Ga. 483 (2) (73 SE 576). Under the facts of this case the Macon Hospital Commission acted under its delegated powers and such action was not arbitrary. *Code* § 69-203. *Mayor &c. of Gainesville v. Dunlap,* 147 Ga. 344 (94 SE 247).

The cross-bill of exceptions discloses no error.

*Judgment affirmed in part and reversed in part on the main bill of exceptions; judgment affirmed on the cross-bill. All the Justices concur.*